**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

ANGELA JANE JOHNSON,

          Defendant.

No. CR 01-3046-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION IN LIMINE
RE:  STEVEN VEST**

---

**TABLE OF CONTENTS**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B.  The Defendant's "Penalty Phase" Motion In Limine . . . . . . . . . . . 7
      1.  The evidence in question . . . . . . . . . . . . . . . . . . . . . 7
      2.  Arguments of the parties . . . . . . . . . . . . . . . . . . . . . 7
         a.  Johnson's argument . . . . . . . . . . . . . . . . . . . . . 7
         b.  The prosecution's argument . . . . . . . . . . . . . . . . . 9
      3.  The court's ruling . . . . . . . . . . . . . . . . . . . . . . . . 10

II.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   A.  Applicable Standards . . . . . . . . . . . . . . . . . . . . . . . . . 11
   B.  Confrontation Clause Challenge . . . . . . . . . . . . . . . . . . . . 12
      1.  Applicability of the Confrontation Clause during the "penalty
         phase" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      2.  Satisfaction of Confrontation Clause requirements . . . . . . . 18
         a.  Does Bruton bar the admissibility of the hearsay? . . . 18
         b.  Does Crawford bar the admissibility of the hearsay? . . 20
   C.  Due Process Clause Challenge . . . . . . . . . . . . . . . . . . . . . 25
   D.  Section 848(j) Challenge . . . . . . . . . . . . . . . . . . . . . . . 27
      1.  The evidentiary standard of § 848(j) . . . . . . . . . . . . . . 27
      2.  Constitutionality of § 848(j) . . . . . . . . . . . . . . . . . . 29

       *3.      Satisfaction of § 848(j) requirements* . . . . . . . . . . . . . . . . 31

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Immediately following her conviction on ten capital charges pursuant to 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2, the defendant moved to exclude during the "penalty phase" of her trial evidence of statements made by a previously convicted co-defendant to a jailhouse informant. The defendant contends that admission of such statements would violate her confrontation and due process rights, because of the unreliability of both the alleged hearsay statements and the jailhouse informant who will recount them. Although the defendant's conviction and the imminent commencement of the sentencing phases of the trial required the court to enter an expedited ruling on the admissibility of the challenged "penalty phase" evidence, the court promised the parties that this more detailed memorandum opinion and order on this issue would follow in due course.

## I. INTRODUCTION

### A. Background

Defendant Angela Johnson was charged with ten capital offenses arising from her involvement in the murders in 1993 of five witnesses to the drug-trafficking activities of her sometime boyfriend, Dustin Honken. The murder victims are Gregory Nicholson, who was one of Honken's methamphetamine dealers; Lori Duncan, a friend of Nicholson's with whom Nicholson was living at the time; Kandi Duncan and Amber Duncan, who were Lori

Duncan's daughters, ages 6 and 10, respectively; and Terry DeGeus, who was another of Honken's methamphetamine dealers. All of the murder victims disappeared in 1993 after Honken was indicted on federal drug charges and after Honken learned that Nicholson and DeGeus had cooperated with law enforcement officers in the investigation of Honken's drug-trafficking activities. The disappearance of the witnesses resulted in the dismissal of the 1993 drug charges against Honken. However, Honken eventually pleaded guilty to other drug charges filed against him in 1996.

In 2000, Johnson was indicted for the killings of Nicholson, the Duncans, and DeGeus on non-capital charges of aiding and abetting the murder of witnesses in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (C), 1512(a)(2)(A) or 1513(a)(1)(A) and (C),[1] 1111, and 2; one count of aiding and abetting the solicitation of the murder of witnesses, in violation of 18 U.S.C. §§ 373(a)(1) and 2; and one count of conspiracy to interfere with witnesses, in violation of 18 U.S.C. § 371. While she was incarcerated pending trial on these charges, Johnson gave a jailhouse informant a map that purportedly showed where the five murder victims were buried. The informant turned the map over to law enforcement officers. The map led law enforcement officers to two shallow graves containing the bodies of the five murder victims.

In separate indictments handed down in 2001, Honken and Johnson were each charged with ten capital offenses for the murder of Nicholson, the Duncans, and DeGeus, consisting of the following charges: five counts of killing or aiding and abetting the killing

---

[1]The court notes that there is no subdivision (C) to 18 U.S.C. § 1513(a)(1), nor does it appear that there ever has been. *See* 18 U.S.C.A. § 1513(a) & Historical and Statutory Notes. Notwithstanding this fact, Count 1 of the Superseding Indictment in this case, which alleges that Johnson aided and abetted the killing of Gregory Nicholson, alleges that the killing was, *inter alia*, "in violation of Title 18, United States Code, Sections . . . 1513(a)(1)(A) & (C). . . ." Superseding Indictment, Count 1.

of witnesses while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and five counts of killing or aiding and abetting the killing of the same witnesses in furtherance of a continuing criminal enterprise ("CCE murder"), also in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. The 2001 indictment against Honken also charged him with seven non-capital offenses, which mirrored the seven non-capital offenses against Johnson in the 2000 indictment.

After a lengthy trial in the fall of 2004, Honken was convicted on October 14, 2004, of all seventeen counts against him. As to the ten capital offenses, the jury found that Honken "intentionally killed" each victim, *i.e.*, that he was guilty as a principal, rather than as an "aider and abettor." After hearing extensive "penalty phase" evidence, the jury reached a verdict on October 27, 2004, finding that Honken should be sentenced to life imprisonment for the murders of the adult victims, but sentenced to death for the murders of the two children. Post-trial motions are still pending in Honken's case.

Johnson's trial followed Honken's conviction by several months. In the interim, the charges against Johnson were consolidated into a single indictment, then the non-capital charges were dismissed. By order dated February 18, 2005 (docket no. 325), *see United States v. Johnson*, 362 F. Supp. 2d 1043, 1099-1111 (N.D. Iowa 2005), the court directed, *inter alia*, that Johnson's trial would be "trifurcated" into three phases: (1) a "merits phase," to determine guilt or innocence of the charged offenses; (2) an "eligibility phase," to determine whether one "gateway aggravating factor" identified in § 848(n)(1) and one or more of the "statutory aggravating factors" in § 848(n)(2) through (12) are present;[2]

_____

[2]The government asserted only one of the four "gateway aggravating factors" identified in 21 U.S.C. § 848(n)(1) in the "eligibility phase," that Johnson "intentionally
(continued...)

and (3) a "penalty phase," to determine whether "non-statutory aggravating factors" and "mitigating factors" are present and "'whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death.'" *Id.* at 1111 (quoting 21 U.S.C. § 848(k)).[3] The court concluded that such "trifurcation" is required in this case for three reasons. First, the court concluded that the danger of unfair prejudice arising from jurors hearing "victim impact" evidence or evidence on other "non-statutory" aggravating factors before the jurors make their determination on the defendant's "eligibility" for the death penalty, on the basis of the

---

[2](…continued)
engaged in conduct intending that the victim[s] be killed or that lethal force be employed against the victim[s], which resulted in the death of the victim[s]." 21 U.S.C. § 848(n)(1)(C). The government asserted only the following three "statutory aggravating factors": for Counts 1 through 10, that Johnson "committed the offense after substantial planning and premeditation," 21 U.S.C. § 848(n)(8); for Counts 1 and 6 (Gregory Nicholson), 2 and 7 (Lori Duncan), and 5 and 10 (Terry DeGeus), that Johnson "committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim," 21 U.S.C. § 848(n)(12); and for Counts 3 and 8 (Kandi Duncan) and 4 and 9 (Amber Duncan), that "[t]he victim was particularly vulnerable due to . . . youth," 21 U.S.C. § 848(n)(9).

[3]The prosecution has clarified that it will assert as "non-statutory aggravating factors" that Johnson will be a danger in the future to the lives and safety of others; that she obstructed justice by preventing the victims from providing testimony or information to law enforcement officers or by retaliating against the victims for cooperating with authorities; that the effect of the crime upon the victims' families was injurious; and for Counts 1 through 4 and 6 through 10, involving the killings of Nicholson and the Duncans, that she intentionally killed more than one person in a single criminal episode. Johnson has advised the court that she intends to assert more than two dozen mitigating factors, including any "residual doubt" that the jurors may have as to her guilt or innocence or role in the offenses.

"gateway" and "statutory" aggravating factors, substantially outweighs any probative value of such evidence to the determination of the defendant's "eligibility" for a death sentence. *Id.* at 1106-09. Second, the court concluded that the information concerning "gateway" and "statutory" aggravating factors in this case is entirely severable from information concerning any other factor, where the government intends to rely only on evidence admitted in the "merits phase" to prove the "gateway" and "statutory" aggravating factors, and introduction of extraneous information into the jury's determination of the "gateway" and "statutory" aggravating factors could only tend to confuse the issues. *Id.* at 1109. Third, the court concluded that, if the jury is permitted to hear information on *all* of the factors in one proceeding, the jury is reasonably likely to be misled into believing that *all* information is pertinent to the determination of *all* factors and the balance of factors. *Id.* at 1109-10.

Prior to Johnson's trial, the government withdrew its allegations that Johnson was a "principal" in the murders and, instead, proceeded to trial only on a theory that Johnson "aided and abetted" each of the "conspiracy murders" and "CCE murders." Johnson's trial on the capital charges commenced with jury selection on April 12, 2004. A jury was seated and presentation of evidence in the "merits phase" began on May 5, 2005. The "merits phase" was submitted to the jury on May 23, 2005, and the jury returned a verdict on May 24, 2005, finding Johnson guilty of aiding and abetting the murders charged in all ten capital counts. The "eligibility phase" began and ended on May 31, 2005, with a jury determination that Johnson is "eligible" for the death penalty on all ten capital counts. The "penalty phase" began immediately thereafter on the afternoon of May 31, 2005, [but has not yet concluded.] [At the conclusion of the "penalty phase," the jury will determine whether Johnson will be sentenced to death or life imprisonment.]

## B.   The Defendant's "Penalty Phase" Motion In Limine

### 1.      The evidence in question

This matter comes before the court pursuant to Johnson's May 25, 2005, Motion In Limine Re:  Steven Vest (docket no. 529).   Although the motion was filed the day following Johnson's conviction on all ten capital offenses in the "merits phase" of the trial, Johnson had provided the court with advance notice of the nature of her objections to Mr. Vest's expected "penalty phase" testimony during the waning days of the "merits phase" of the trial.   In her motion, Johnson states that she expects the government to present during the "penalty phase" the testimony of Steven Vest, an inmate who, in 2000 and 2001, was serving a life sentence in the same institution in which Dustin Honken was serving his sentence on the 1996 drug-trafficking charges. Mr. Vest claims that Honken made statements to him concerning the killings charged in this case, including statements that implicated Johnson in certain activities with respect to those killings.[4]   Johnson seeks a ruling that Mr. Vest's testimony concerning statements made to him by Honken are not admissible in the government's "penalty phase" case-in-chief.

### 2.      Arguments of the parties

#### a.      Johnson's argument

Johnson's argument for exclusion of Mr. Vest's testimony runs as follows.  During a hearing on May 18, 2005, prompted by Johnson's request to subpoena Dustin Honken to testify during the "penalty phase" of her trial, Dustin Honken and his counsel made clear that Honken would exercise his Fifth Amendment right to remain silent, if called to testify in this trial.   Therefore, Johnson asserts that Honken is unavailable for cross-

---

[4]The court has some sense of the testimony that Mr. Vest is likely to give in the "penalty phase" in this case, because Mr. Vest was also a witness in the trial of Dustin Honken.

examination concerning any statements that Mr. Vest claims that Honken made to him. Johnson contends that, even though the Federal Rules of Evidence are not applicable in the "penalty phase," the court should still exercise its gatekeeper role to exclude Mr. Vest's evidence during the "penalty phase," because the Federal Rules of Evidence do not define the constitutional limits on admissibility of evidence.

More specifically, Johnson contends that due process requires that the information presented during the "penalty phase" must have sufficient indicia of reliability and trustworthiness to be presented to a jury, but that neither Mr. Honken's hearsay statements nor Mr. Vest's recounting of such statements is sufficiently reliable. Next, she contends that Mr. Vest's testimony about Honken's statements would violate the Confrontation Clause if offered at trial, that the Confrontation Clause also applies to the "penalty phase," and that her confrontation rights would, consequently, be violated if the court permits Mr. Vest's testimony about Honken's statements during the "penalty phase." Indeed, Johnson's preliminary characterization of the issue, before she actually filed her motion, was that it was a *Bruton*/Confrontation Clause challenge to Mr. Vest's testimony. Finally, she contends that Mr. Vest's testimony should be precluded, because the probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, such that it is barred by 21 U.S.C. § 848(j).

The essence of Johnson's argument concerning the admissibility of Mr. Vest's testimony is as follows:

> Jailhouse informant testimony itself is generally recognized by courts as testimony that should be viewed with care and caution. Statements whose admission at trial would violate the confrontation clause rights of [the defendant] are also recognized as unreliable, precisely because they are not subject to cross-exam [sic] and do not fall within a firmly-rooted hearsay exception. This is particularly true of

8

statements allegedly made by an alleged participant in a crime purporting, at least in part, to implicate another in the crime. In the jailhouse informant situation present, here [sic] we have the confluence of two unreliable information sources: 1) the jailhouse informant himself, Mr. Vest; and 2) the alleged hearsay [of a Co-]Defendant, Mr. Honken.

Defendant's position is that Mr. Vest's testimony should be excluded by the Court exercising its proper gatekeeping function.

Defendant's Brief In Support Of Motion In Limine Re: Steven Vest, 4-5.

### b.    The prosecution's argument

The government resisted Johnson's motion to exclude Mr. Vest's testimony on May 26, 2005 (docket no. 536). The government contends that Mr. Vest's testimony is admissible for several reasons. First, the government contends that, while the court should exercise its "gatekeeper function" to exclude unreliable evidence during the "penalty phase," the Eighth and Second Circuit Courts of Appeals have recognized that the relaxed evidentiary standards for the "penalty phase" under the Federal Death Penalty Act (FDPA), which are also echoed in 21 U.S.C. § 848(j), do not impair reliability of evidence, but instead increase the reliability of the "penalty phase" by providing full and complete information about the defendant and by allowing the required individualized inquiry concerning the appropriate sentence, citing *United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004), *petition for cert. filed*, (Feb. 18, 2005) (NO. 04-8773), and *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 369 (2004). The government contends, next, that Johnson's Confrontation Clause issues have been negated by the court's "trifurcation" of proceedings, because the presentation of the evidence in question will be limited to a phase of the trial in which Johnson's confrontation rights are not implicated. In any event, the government argues that the evidence in

question here does not implicate Confrontation Clause concerns, because it does not constitute "misinformation." Finally, the government contends that the evidence in question is simply not so "unreliable" that it implicates due process concerns or violates the relaxed admissibility rules applicable to the "penalty phase." Rather, the government asserts that Honken made the statements to Mr. Vest in an effort to obtain his assistance with escaping from prison, not to obtain a favorable plea agreement or to curry favor with the government, so that Honken had no motive at the time that he made the statements to exaggerate Johnson's involvement in the offenses. The government also points out that Mr. Vest's recitation of Honken's statements is consistent with forensic evidence. Thus, the government contends that Mr. Vest's testimony is not only reliable, but highly probative of Johnson's role in the offenses, where Johnson has put her role at issue as a "mitigating factor" in the "penalty phase."

### 3. The court's ruling

The court filed a brief written ruling dated May 26, 2005 (docket no. 539), denying Johnson's motion in limine regarding Mr. Vest's testimony. The court explained, in cursory fashion, that the motion was denied, because trifurcation of the proceedings in this case obviates Johnson's confrontation and due process concerns and because the court does not find Mr. Vest's testimony either unreliable or unduly prejudicial. The court advised the parties that a more detailed written ruling would follow. The court now fulfills that promise with the present ruling.

## II. LEGAL ANALYSIS

### A. Applicable Standards

The "Continuing Criminal Enterprise" statute, 21 U.S.C. § 848, expressly provides that the Federal Rules of Evidence are not applicable in the "penalty phase" of a trial of a defendant for a capital offense under 21 U.S.C. § 848(e) and that a different standard applies to the admissibility of "information" in the "penalty phase":

> Information presented [in a "penalty phase" hearing pursuant to 21 U.S.C. § 848(h)] may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial or at the trial judge's discretion. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

21 U.S.C. § 848(j). This court previously noted in this case that "it is not necessarily clear that the 'relaxed evidentiary standard' [in 21 U.S.C. § 848(j)] necessarily supplants constitutional standards found in the Fifth and Sixth Amendments, because it expressly supplants only *the rules of evidence*, not constitutional standards." *United States v. Johnson*, 239 F. Supp. 2d 924, 946 (N.D. Iowa 2003) (emphasis in the original) (ruling on defendant's motion to declare the death penalty provisions of 21 U.S.C. § 848 unconstitutional). This court concluded, further, that "it retains the authority under the statute to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments." *Id.* (emphasis in the original); *cf. United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004) (the relaxed evidentiary standard for "penalty phase" evidence under 18 U.S.C. § 3593(c) of the FDPA "does not eliminate this function of the

judge as gatekeeper of constitutionally permissible evidence"), *cert. denied*, ___ U.S. ___, 125 S. Ct. 369 (2004). Therefore, the court must consider both Johnson's constitutional challenges to the admissibility of Mr. Vest's testimony and her challenges pursuant to § 848(j) standards.

## B. Confrontation Clause Challenge

Johnson contends that her confrontation rights persist into the "penalty phase" of her trial and that Mr. Vest's recitation in the "penalty phase" of hearsay statements purportedly made by Dustin Honken would violate her confrontation rights. The court does not find this argument for exclusion of the evidence to be persuasive.

### 1. Applicability of the Confrontation Clause during the "penalty phase"

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. However, Johnson cites no authority for the proposition that a defendant's confrontation rights persist into the "penalty phase" of a capital case, and the court has found no such controlling authority. Rather, "[i]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding." *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003), *cert. denied*, ___ U.S. ___, 125 S. Ct. 627 (2004).

The Eighth Circuit Court of Appeals has never held, so far as this court can find, that the Confrontation Clause applies to the "penalty phase" of a capital trial. It is true that, in *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *petition for cert. filed*, (Feb. 18, 2005) (NO. 04-8773), the defendant contended "that he retains confrontation rights during the penalty phase," citing *Ring v. Arizona*, 536 U.S. 584, (2002). *See Lee*, 374 F.3d at 649. However, the court did not address that argument, because "the government

d[id] not contest that [the defendant] has confrontation rights during the penalty phase." *Lee*, 374 F.3d at 649. Thus, the key issue in *Lee* was not whether or not a defendant retains confrontation rights into the "penalty phase," but whether or not the defendant in that case had waived those confrontation rights. *Id.* This court also finds that the Supreme Court's decision in *Ring*, on which the defendant in *Lee* relied, does not stand for the proposition that a defendant's confrontation rights extend into the "penalty phase." Rather, the decision in *Ring* stands for the more limited proposition that the Sixth Amendment right to trial by jury requires jury determination, in a capital case as well as a non-capital case, of any fact on which the legislature conditions an increase in a defendant's maximum punishment. *Ring*, 536 U.S. at 589 (finding this holding required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

On the other hand, the Eighth Circuit Court of Appeals recently reiterated the general proposition that "the confrontation clause does not apply in sentencing proceedings." *United States v. Wallace*, ___ F.3d ___, ___, 2005 WL 1200892, *2 (May 23, 2005) (citing *United States v. Due*, 205 F.3d 1030, 1033 (8th Cir. 2000), in a decision on appeal of sentencing on a charge of being a felon in possession of a firearm); *see also United States v. Hammer*, 3 F.3d 266, 272 (8th Cir. 1993), *cert. denied sub nom. Walkner v. United States*, 510 U.S. 1139 (1994); *United States v. Wise*, 976 F.2d 393, 400-01 (8th Cir. 1992) (*en banc*), *cert. denied*, 507 U.S. 989 (1993); *accord Todd v. Schomig*, 283 F.3d 842, 853 (7th Cir.) (observing, in a ruling rejecting a challenge to hearsay testimony at sentencing on Sixth and Fourteenth Amendment grounds, that "[h]earsay may be admitted at sentencing, even in death penalty cases, without violating the Constitution."), *cert. denied*, 537 U.S. 846 (2002). Also, in *Williams v. New York*, 337 U.S. 241 (1949), the Supreme Court held that the Due Process Clause was *not* violated by a state statute that allowed a judge to impose a death sentence based, at least in part, on a probation office

report that included information supplied by witnesses with whom the accused had not been confronted and as to whom the accused had not had an opportunity for cross-examination or rebuttal. *Williams*, 337 U.S. at 251-52. More recently, in *Szabo v. Walls*, 313 F.3d 392 (7th Cir. 2002), the Seventh Circuit Court of Appeals read *Williams v. New York* to stand for the proposition that "the Confrontation Clause does not apply to capital sentencing," but instead, "applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty." *Szabo*, 313 F.3d at 398. The court in *Szabo* concluded that subsequent changes in the law of capital sentencing had never caused the Supreme Court to call into question the precise holding of *Williams v. New York*. *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153 (1976), and *Lockett v. Ohio*, 438 U.S. 586 (1978)). The court in *Szabo* next noted that the Supreme Court had held in *Specht v. Patterson*, 386 U.S. 605 (1967), which the *Szabo* court described as "a precursor of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring*[, 536 U.S. at 584]," that "the Confrontation Clause applies during those portions of a sentencing proceeding that can lead to an increase in the maximum lawful punishment," but the *Szabo* court held that the third balancing phase of a capital proceeding under Illinois law "is outside the ambit of *Specht*" where the second phase "already had lifted the maximum punishment to a sentence of death." *Szabo*, 313 F.3d at 399. Although the court acknowledged that *Apprendi* and *Ring* "may portend more changes and may eventually be applied to the balancing phase of capital sentencing, . . . they were not so applied" at the time of the defendant's conviction. *Id.*

This conclusion that "trifurcation" can cure potential Confrontation Clause problems is in accord with two decisions cited by Johnson when she provided the court with preliminary notice of her motion, but on which she subsequently did not rely in her brief in support of her motion. In the earlier of the two decisions, *United States v. Jordan*, 357

14

F. Supp. 2d 889 (E.D. Va. 2005), the court noted, "The evidentiary and deliberative process in the penalty phase of a capital case has two facets: eligibility and selection." *Jordan*, 357 F. Supp. 2d at 902. This court recognized the same facets of the penalty phase in its order "trifurcating" proceedings in this case. *See Johnson*, 362 F. Supp. 2d at 1099-1111. In *Jordan*, the court observed,

> From a constitutional perspective, the eligibility phase is the most critical because it is a necessary prerequisite to the jury's consideration of the death penalty. It encompasses the finding of fact that increases the defendant's authorized punishment from life in prison to death. "Accordingly, with the exception of the fact of prior convictions, those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offense[ ] and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt." *Higgs*, 353 F.3d at 298.
>
> In reaching its conclusion in *Higgs*, the Fourth Circuit relied upon the Supreme Court's holdings in *Ring* and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In *Apprendi*, the Court held that any fact in a federal prosecution that increases the maximum penalty should be treated as an element of an aggravated offense and must be charged in the indictment and proved to the jury beyond a reasonable doubt. 530 U.S. at 490, 120 S. Ct. 2348. *Consistent with the constitutional safeguards identified by the United States Supreme Court, as interpreted by the Fourth Circuit, this Court is of the opinion that with respect to the eligibility phase of the penalty stage of a capital trial, the Confrontation Clause is equally applicable.*

*Jordan*, 357 F. Supp. 2d at 902-03 (emphasis added). The court found that this conclusion would bar the hearsay testimony at issue in that case, "at least in the eligibility stage." *Id.* at 903.

However, the court in *Jordan* noted that "no court has applied the teachings of *Ring* beyond the statutory factors at issue in the eligibility phase." *Id.* The court then observed that the "selection phase"—the phase of the trifurcated proceedings that this court has denominated the "penalty phase"—is different:

> Unlike the eligibility phase, the selection phase is intended to be less structured and less encumbered by strict adherence to the Rules of Evidence. Evidence which is relevant to the statutory factors underlying the eligibility issue may have no bearing on the nonstatutory factors governing selection for the death penalty. Unless its probative value is substantially outweighed by the danger of unfair prejudice, the jury should "have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 203-04, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Moreover, as the Court noted in *Jurek v. Texas*, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976), the jury should "have before it all possible relevant information about the individual defendant whose fate it must determine." *Id.* at 276, 96 S. Ct. 2950; *see also Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L.Ed. 1337 (1949).

*Jordan*, 357 F. Supp. 2d at 903. The court in *Jordan* concluded that, "if the trial proceeds to the penalty phase, the Government intends to offer evidence which, in this Court's view, is inadmissible on the issue of eligibility but permissible in the selection process." *Id.* Therefore, the court divided the sentencing stage of the trial into separate eligibility and selection phases to avoid the Confrontation Clause problem by limiting evidence that purportedly implicated the Confrontation Clause to the selection phase, where the Confrontation Clause was not applicable, even if the Confrontation Clause was applicable to the eligibility phase. *Id.* (also considering whether the evidence in question would satisfy § 848(j) to be admissible in the selection phase).

Similarly, in *United States v. Bodkins*, 2005 WL 1118158 (W.D. Va. 2005), another Virginia federal court followed *Jordan* to hold that trifurcation of the proceedings would obviate Confrontation Clause concerns. *Bodkins*, 2005 WL 1118158 at *5. The court held that, while Confrontation Clause requirements would have to be met for evidence to be admissible during the eligibility phase, those requirements "would not apply to hearsay evidence . . . offered during the selection phase." *Id.*

Similarly, here, the court's "trifurcation" of the proceedings has already provided the defendant with Confrontation Clause and other Sixth Amendment protections through the "eligibility phase," which "already ha[s] lifted the maximum punishment to a sentence of death." *See Szabo*, 313 F.3d at 399; *Bodkins*, 2005 WL 11188158 at *4-*5 (also holding that the eligibility phase of capital sentencing proceedings is the constitutionally critical phase, because it is the prerequisite to imposition of the death penalty); *Jordan*, 357 F. Supp. 2d at 902-03 (same). "Trifurcation" also satisfies the express requirements of *Ring*, and indeed, the express requirements of *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005), because even in the third phase, the "selection" or "penalty" phase, it is the jury that makes the final factual findings and determination of what penalty to impose. *See Jordan*, 357 F. Supp. 2d at 903-04 (trifurcation satisfies the requirements of *Ring*). Thus, Johnson has not convinced the court that the Confrontation Clause also applies in the final phase of these trifurcated proceedings, even assuming it would apply to the eligibility phase. *Cf. id.*[5]

---

[5] There was no Confrontation Clause issue as to the "eligibility phase" in these proceedings, because the government presented no additional evidence during the "eligibility phase."

## 2. Satisfaction of Confrontation Clause requirements

Even if the Confrontation Clause applies to the final "penalty phase" of this "trifurcated" trial, Johnson has failed to convince the court that introduction of Mr. Vest's testimony would violate the Confrontation Clause. However, before explaining why the court is unconvinced, the court must first determine whether the Confrontation Clause issue is a "*Bruton* issue" or a "*Crawford* issue."

### a. Does Bruton bar the admissibility of the hearsay?

As the Eighth Circuit Court of Appeals recently explained,

> In *Bruton [v. United States*, 391 U.S. 123 (1968)], the Supreme Court held that the admission of statements from a non-testifying defendant that inculpated a co-defendant violated the latter's Confrontation Clause rights, despite a curative instruction otherwise. [*Bruton*, 391 U.S.] at 135-36; *United States v. Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003). However, when the statements are those of a co-conspirator and are admissible under Federal Rule of Evidence 801(d)(2)(E), the Sixth Amendment and *Bruton* are not implicated. *United States v. Alcantar*, 271 F.3d 731, 739 (8th Cir. 2001) (citing *United States v. Coco*, 926 F.2d 759, 761 (8th Cir. 1991)). Therefore, if the statements about which [the defendant] complains were statements that satisfy Rule 801(d)(2)(E), *Bruton* and the Sixth Amendment are not implicated.

*United States v. Mickelson*, 378 F.3d 810, 819 (8th Cir. 2004). What is at issue here is certainly the admissibility of "statements of a non-testifying defendant [Honken] that inculpated a co-defendant [Johnson]." *Id.* Also, the government has certainly alleged that Honken was Johnson's co-conspirator. *Id.* (*Bruton* and the Sixth Amendment are not implicated by co-conspirator hearsay within the meaning of Rule 801(d)(2)(E)). However, the government does not assert that Mr. Vest's testimony about Honken's statements is

admissible under Rule 801(d)(2)(E), and has not attempted to show that Honken's statements to Mr. Vest were during and in furtherance of Honken's conspiracy with Johnson. *See* FED. R. EVID. 801(d)(2)(E) (a statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy").

Nevertheless, *Bruton* does not apply where the defendant and the declarant are tried separately. *Bruton*, 391 U.S. at 123-24 (framing the question presented as "whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence"); *Gray v. Maryland*, 523 U.S. 185, 194-95 (1998) (a prosecutor desiring to use an accomplice's confession must comply with *Bruton*, hold separate trials, or use separate juries); *United States v. Hawk Wing*, 459 F.2d 428, 429 (8th Cir. 1972) ("*Bruton* . . . requires separate trial where out-of-court statements of a codefendant implicating the defendant will be deliberately spread before the jury in the event of a joint trial"). Therefore, *Bruton* is inapplicable here, where Johnson and Honken are being tried separately. Even if *Bruton* is applicable where the defendant and the declarant are tried separately, however, the court finds that the Confrontation Clause issue presented here is properly resolved according to the standards stated in *Crawford v. Washington*, 541 U.S. 36 (2004). *See, e.g., United States v. Rashid*, 383 F.3d 769, 775-76 (8th Cir. 2004) ("*Crawford* did not overrule *Bruton*," because it cited *Bruton* as a case consistent with the original understanding of the Confrontation Clause, but "*Crawford* may have eclipsed *Bruton*" by establishing standards for admissibility of hearsay over Confrontation Clause objections); *United States v. Gibson*, ___ F.3d ___, ___, 2005 WL 1280043, *9 (6th Cir. May 24, 2005) ("The Supreme Court has held that the admission of statements by a nontestifying codefendant that implicate the accused are presumptively unreliable and thus in violation of the Confrontation Clause," citing *Bruton*, "[b]ut hearsay

statements may be constitutionally admissible despite a defendant's inability to confront the declarant at trial where" the requirements of *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999), and *Crawford* are satisfied).

### b.      Does Crawford bar the admissibility of the hearsay?

Johnson appears to acknowledge, and the court finds, that the Supreme Court's recent decision in *Crawford* sets the standard for admissibility of the hearsay evidence in question here over Confrontation Clause objections. *See United States v. Jordan*, 357 F. Supp. 2d 889, 898 (E.D. Va. 2005) (noting in a case in which the defendant challenged the admissibility of hearsay evidence in the "penalty phase" of a capital trial that "[w]hat is clear . . . is that *Crawford* has reordered Confrontation Clause jurisprudence"); *but see United States v. Bodkins*, 2005 WL 1118158, *4 (W.D. Va. May 11, 2005) ("No court has held that *Crawford* applies to the entire penalty proceeding, however.").[6]

In *Crawford*, the Court established the following bright-line rule concerning the admissibility of hearsay statements over Confrontation Clause objections:

---

[6]The *Jordan* decision and the *Bodkins* decision both cast their analyses of whether the Confrontation Clause was implicated by admission of hearsay evidence in either the eligibility phase or the selection/penalty phase in terms of whether or not the requirements of *Crawford* applied to the phase in question. *See Jordan*, 357 F. Supp. 2d at 903-904; *Bodkins*, 2005 WL 1118158 at *4-*5. Thus, for example, in *Jordan*, the court's conclusion that certain hearsay evidence was barred in the eligibility phase by the Confrontation Clause was stated as a conclusion that the evidence "is barred at least in the eligibility stage by the dictates of *Crawford*," while that court's conclusion that the Confrontation Clause does not apply in the selection phase was stated as a conclusion that there were no "*Crawford* limitations" on selection phase evidence. *Jordan*, 357 F. Supp. at 903-04; *Bodkins*, 2005 WL 1118158 at *4-*5 ("[A]s the *Jordan* court noted, any testimonial hearsay evidence offered during the eligibility phase would have to meet the requirements of *Crawford* before it could be presented to the jury. Those same requirements would not apply to hearsay evidence, testimonial or non-testimonial, offered during the selection phase.").

Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *[Ohio v.] Roberts*, [448 U.S. 56 (1980),] and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Crawford*, 541 U.S. at 68. One reading of this statement is that there is no Confrontation Clause issue at all as to the admissibility of non-testimonial hearsay, leaving only the evidentiary requirements of hearsay law. *See United States v. Reyes*, 362 F.3d 536, 541 n.4 (8th Cir. 2004) ("*Crawford* did not provide additional protection for nontestimonial statements, and indeed, questions whether the Confrontation Clause protects nontestimonial statements at all. *Id*. at [1374]."). On the other hand, this statement can also be read to make *Roberts* the appropriate analysis of Confrontation Clause requirements for "non-testimonial" hearsay. *See Gibson*, ___ F.3d at ___, 2005 WL 1280043 at *9 ("*Crawford* dealt only with testimonial statements and did not disturb the rule that nontestimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness."). In the interest of protecting the defendant's rights, if the challenged testimony at issue is "non-testimonial," the court will assess the admissibility of that evidence, for evidentiary and Confrontation Clause purposes, in light of "hearsay law" *and* Confrontation Clause requirements, as formulated in *Roberts*.

Johnson does not argue that Honken's statements are "testimonial"; consequently, "confrontation" is *not* the only adequate protection for her confrontation rights. *See Crawford*, 541 U.S. at 68. Indeed, the court expressly finds that the statements are "non-testimonial," because "[t]hey were not ex-parte in-court testimony or its equivalent; were

not contained in formalized documents such as affidavits, depositions, or prior testimony transcripts; and were not made as part of a confession resulting from custodial examination. Rather, [Honken's] statements were made during a private conversation with [another person]." *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (applying the *Crawford* standards), *cert. denied*, ___ U.S. ___, 124 S. Ct. 971 (2005). Thus, Honken "did not make the statements under circumstances in which an objective person would 'reasonably believe that the statement[s] would be available for use at a later trial.'" *Id.* (quoting *Crawford*, 541 U.S. at 52). Consequently, for the non-testimonial hearsay embodied in Mr. Vest's testimony, the question is whether admission of the hearsay evidence comports with hearsay law and Confrontation Clause requirements, as formulated in *Roberts*. *See Crawford*, 541 U.S. at 68.

As to Confrontation Clause requirements, in *Roberts*, the Supreme Court stated,

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66; *see also Lilly*, 527 U.S. 124-25 (hearsay statements may be constitutionally admissible despite a defendant's inability to confront the declarant at trial where "(1) the evidence falls within a firmly rooted hearsay exception or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability"); *White v. Illinois*, 502 U.S. 346, 356 & n.8 (1992) (recognizing that firmly rooted exceptions to the hearsay rules of

evidence carry sufficient indicia of reliability to satisfy the reliability requirement of the Confrontation Clause); *United States v. Chapman*, 356 F.3d 843, 846 (8th Cir. 2004) ("Hearsay statements exhibit adequate indicia of reliability if they '"fall[ ] within a firmly rooted hearsay exception" or . . . contain[ ] "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability.'") (quoting *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999) (plurality opinion), in turn quoting *Roberts*, 448 U.S. at 66, and also citing *United States v. Papajohn*, 212 F.3d 1112, 1119 (8th Cir. 2000)).

The hearsay statements at issue here are plainly "statements against [Honken's] interest," even to the extent that they implicate Johnson; thus, they fall within the hearsay exception embodied in Rule 804(b)(3) of the Federal Rules of Evidence. *See* FED. R. EVID. 804(b)(3) ("A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true" is not excluded by the hearsay rule if the declarant is unavailable as a witness). However, such an exception is not "firmly-rooted." *See Lilly v. Virginia*, 527 U.S. 116, 133-34 (1999) (plurality opinion) ("It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.' *White [v. Illinois]*, 502 U.S. [346,] 357, 112 S. Ct. 736 [(1992)]. . . . [A]ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence."). Thus, the hearsay in question here is not admissible under the "firmly-rooted hearsay exception" prong of the *Roberts* analysis.

The government, however, asserts that there are sufficient indicia of reliability for the hearsay statements at issue to be admissible pursuant to the second prong of the *Roberts* standard. The government contends that Honken did not make the statements to obtain a favorable plea or to curry favor, but instead, made them to an acquaintance to solicit his assistance in escaping from prison. Thus, the government contends that Honken had no motive to exaggerate Johnson's involvement in the crimes. The court agrees, albeit with some reservations. *See, e.g., Ramirez v. Dretke*, 398 F.3d 691, 696 (5th Cir. 2005) (the declarant was not in custody, but he spontaneously initiated the conversation implicating himself and the defendant in a murder, he made the statements to a friend, and even though the statements implicated the defendant as well as the declarant, the declarant had no apparent incentive at the time of the statements to risk implicating himself and no apparent reason to believe that his statements might result in leniency in any subsequent prosecution), *petition for cert. filed*, (April 26, 2005) (NO. 04-9918); *United States v. Robbins*, 197 F.3d 829, 839-40 (7th Cir. 1999) (a statement had sufficient indicia of reliability where it was made voluntarily in conversation with the declarant's fiancée and confidante, and the circumstances in which the statement was made provided no reason to suspect any coercion, any ulterior motive, any desire to curry favor with authorities, or any reason not to tell the truth). While the circumstances in which the statements were made might not be enough, standing alone, to establish reliability, here, as the government suggests, the reliability of Honken's statements and Mr. Vest's report of those statements is significantly enhanced where the statements are corroborated by forensic evidence. *Cf., e.g., United States v. Martin*, 382 F.3d 840, 846 (8th Cir. 2004) (noting that objective medical evidence and physical injuries corroborated an unavailable victim's hearsay statements). Therefore, even if the Confrontation Clause applies to the "penalty phase," the evidence in question here is admissible over Confrontation Clause challenges.

## C. Due Process Clause Challenge

Johnson mounts a Due Process Clause challenge to Mr. Vest's testimony, as well as a Confrontation Clause challenge. In essence, she contends that Honken's statements and Mr. Vest's report of those statements are both so unreliable that admission of Mr. Vest's testimony would violate her due process right to a fair trial. The government, again, asserts that the evidence is sufficiently reliable to satisfy due process.

The Due Process Clause of the Fifth Amendment provides that "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. Similarly, the Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *Id.*, AMEND. XIV. "The Due Process Clause requires a fair trial in a fair tribunal." *Veal v. Iowa Correctional Inst. for Women*, 274 F.3d 479, 481 (8th Cir. 2001), *cert. denied*, 537 U.S. 834 (2002). However, the Due Process Clause does not provide any greater protection in a capital case for a fair penalty phase hearing than there is for a fair trial. *See United States v. Allen*, 247 F.3d 741, 776 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

The admissibility of evidence over a Due Process Clause challenge turns on the "reliability" of such evidence. For example, in response to a combined Sixth and Fourteenth Amendment challenge to the admission of hearsay during sentencing, the Seventh Circuit Court of Appeals concluded that, "[t]o implicate constitutional concerns, the evidence must amount to 'misinformation.'" *Todd v. Schomig*, 283 F.3d 842, 853 (7th Cir. 2002). The court explained that, "[s]o long as the evidence is reliable and the defendant is provided notice and an opportunity to challenge its reliability, no constitutional violation results from the admission of hearsay at sentencing." *Id.*; *United States v. Charlesworth*, 217 F.3d 1155, 1160 (9th Cir. 2000) (use of hearsay evidence may

violate due process, if the evidence is materially false or unreliable); *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000) ("[T]he defendant has a due process right to be sentenced on the basis of reliable information."); *United States v. Gibbs*, 182 F.3d 408, 440 (6th Cir.) ("[D]ue process requires that facts used for sentencing must have some minimum indicium of reliability beyond mere allegation."), *cert. denied*, 528 U.S. 1051 (1999); *United States v. McClellan*, 165 F.3d 535, 552 (7th Cir.) ("'[D]ue process requires that a defendant have a reasonable opportunity to rebut contested hearsay and that contested hearsay be reliable.'") (quoting *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir. 1993)), *cert. denied*, 526 U.S. 1094 & 1125 (1999).

Here, for the same reasons that the court found Mr. Vest's testimony about Honken's statements to be sufficiently reliable to satisfy the Confrontation Clause, the court now finds that the challenged evidence is sufficiently reliable to satisfy the Due Process Clause. Moreover, Johnson will have an opportunity to challenge the reliability of Mr. Vest's testimony during the "penalty phase." *See id.* Therefore, the court finds no due process bar to the admission of Mr. Vest's testimony during the "penalty phase" of Johnson's trial.

Furthermore, both the Supreme Court and the Eighth Circuit Court of Appeals have held that the reliability of the "penalty phase" of a capital case is enhanced by the admission of more, rather than less, evidence. *See Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976) ("We think it desirable for the jury to have as much information before it as possible when it makes the [capital] sentencing decision."); *Williams v. New York*, 337 U.S. 241, 247 (1949) ("[M]odern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable at trial."); *United States v. Lee*, 374 F.3d 637, 348 (8th Cir. 2004) ("[T]he

admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for individualized inquiry into the appropriate sentence for the offense.") (citing *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 369 (2004)), *petition for cert. filed*, (Feb. 18, 2005) (NO. 04-8773). Thus, admission of the challenged evidence, particularly when the defendant will have the opportunity to challenge the reliability of that evidence, is likely to enhance rather than detract from the reliability of the "penalty phase."

### D. Section 848(j) Challenge

Finally, Johnson contends that Mr. Vest's testimony should be excluded, because it fails to meet even the "relaxed evidentiary standard" of 21 U.S.C. § 848(j), where the probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The government, however, asserts that Mr. Vest's testimony is reliable, probative, and not unduly prejudicial, confusing, or misleading.

### 1. The evidentiary standard of § 848(j)

Section 848(j) permits the jury to consider "information" rather than "evidence" at the sentencing phase of a capital offense, without regard to the admissibility of that "information" under the Federal Rules of Evidence. *See* 21 U.S.C. § 848(j) ("[I]nformation relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials."). At the same time, the statute provides that "information" may be excluded in the "penalty phase" of the trial of a § 848

offense "if its probable value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j).

In another prior ruling in this case, this court noted, "This limitation appears to be analogous to the limitation on 'evidence' in Rule 403 of the Federal Rules of Evidence, which permits the court to exclude 'evidence' that is 'relevant,' *inter alia*, 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Johnson*, 362 F. Supp. 2d 1043, 1105 (N.D. Iowa 2005) (quoting FED. R. EVID. 403, and also citing Justin D. Flamm, *Due Process on the "Uncharted Seas of Irrelevance": Limiting the Presence of Victim Impact Evidence at Capital Sentencing after Payne v. Tennessee*, 56 WASH. & LEE L. REV. 295, 310-311 (1999), which notes that the similar evidentiary limitation in the Federal Death Penalty Act, 18 U.S.C. § 3593, is "clearly analogous to Federal Rule of Evidence 403," although § 3593 lacks the word "substantially," suggesting "a lower threshold for exclusion applies at a capital sentencing hearing"). Indeed, this court noted, "The analogy between § 848(j) and Rule 403 is closer than the analogy between § 3593 [of the FDPA] and Rule 403, because § 848(j) does include the requirement that the probative value of information be "substantially" outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, before the information is excluded. *Id.* at 1105 n.17. "Thus," this court observed, "even under this capital sentencing scheme, the court retains at least part of its 'gatekeeper' function under Rule 403 to balance probative value of the 'information' to be presented against its 'danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Id.* at 1105 (quoting 21 U.S.C. § 848(j), and also citing *United States v. Pretlow*, 779 F. Supp. 758, 770-71 (D.N.J. 1991), as concluding that this evidentiary standard in § 848(j) "is adequate to meet constitutional demands" by preventing the admission of "unreliable" information in a capital sentencing phase).

## 2. *Constitutionality of § 848(j)*

The Second Circuit Court of Appeals concluded that the comparable provision of the Federal Death Penalty Act establishing the evidentiary standard for the "penalty phase," 18 U.S.C. § 3593(c), does not eliminate a defendant's constitutional rights to due process and confrontation by eliminating the applicability of the Federal Rules of Evidence. In *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 369 (2004), the Second Circuit Court of Appeals concluded that the Federal Rules of Evidence are not "the only means to safeguard these rights and to provide the 'heightened reliability' necessary in imposing a sentence of death." *Fell*, 360 F.3d at 144. This was so, the court concluded, because "[t]he FRE . . . do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the FRE in place," where the Federal Rules of Evidence are inapplicable to certain criminal proceedings, such as sentencings, and there are circumstances in which the Federal Rules of Evidence would admit evidence that the Constitution would bar, and vice versa. *Id.* "So long as the FDPA Standard provides a level of protection that ensures that defendants receive a fundamentally fair trial," the court explained, "the act satisfies constitutional requirements." *Id.* at 145. The court found that the FDPA "certainly met" this requirement of a fundamentally fair trial, because the balancing test under the FDPA is actually "more stringent" than the standard under Rule 403, where the FDPA does not require that the potential of the evidence to prejudice the defendant or confuse or mislead the jury "substantially" outweigh its probative value. *Id.* The court also concluded that the FDPA does not eliminate the trial court's gatekeeper function to exclude unconstitutional evidence otherwise admissible under the Federal Rules of Evidence. *Id.* Thus, the court concluded that "the FDPA Standard 'does not impair the reliability or relevance of information at capital sentencing hearings.' Rather, it 'helps to

accomplish the individualized sentencing required by the constitution.'" *Id.* at 145-46 (internal citations omitted) (quoting *United States v. Jones*, 132 F.3d 232, 242 (5th Cir. 1998)). Therefore, the court concluded that the evidentiary standard of the FDPA "meets constitutional requirements." *Id.* at 146.

Similarly, this court has previously held in this case that § 848(j), which establishes the relaxed evidentiary standard for capital sentencing proceedings under the Continuing Criminal Enterprise statute, does not eliminate constitutional standards for the admissibility of evidence. *United States v. Johnson*, 239 F. Supp. 2d 924, 946 (N.D. Iowa 2003) (the court "retains the authority under [§ 848(j)] to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments") (emphasis in the original). Nor does this court believe that § 848(j) somehow fails to meet the constitutional requirements for admissibility of evidence, simply because it precisely mirrors the balancing standard of Rule 403, by permitting the court to exclude evidence whose probative value is "substantially" outweighed by its potential for prejudice or confusing or misleading the jury. *Compare Fell*, 360 F.3d at 145 (finding that § 3593(c) "certainly meets" the constitutional standard, because the omission of "substantially" made the statutory standard "more stringent" than the Rule 403 standard). This is so, precisely because judges retain their gatekeeper function under § 848(j), as they do under § 3593(c), "'to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair.'" *Id.* (quoting *United States v. Battle*, 264 F. Supp. 2d 1088, 1106 (N.D. Ga. 2003), and also citing this court's decision in *Johnson*, 239 F. Supp. 2d at 946). Thus, § 848(j) also enhances rather than impairs the reliability of the information at a capital sentencing hearing for a § 848(e) offense and also meets constitutional requirements. *Cf. id.* (so holding for § 3593(c)).

### 3.    Satisfaction of § 848(j) requirements

As the court has stated twice before, there are sufficient indicia of reliability to the challenged evidence to satisfy constitutional requirements and, thus, there are sufficient indicia of reliability to satisfy the statutory standard of § 848(j). *Cf. Fell*, 360 F.3d at 145 (§ 3593(c) permits the court to exclude unreliable information). Indeed, the purported unreliability of the evidence appears to be the basis for Johnson's challenge on both the "probative value" and "prejudice" prongs of the § 848(j) analysis, where Johnson has not articulated any other challenge to the probative value or potential for prejudice that the challenged evidence purportedly poses. The court also finds that the government is correct that Mr. Vest's testimony concerning statements by Honken about Johnson's role in the offenses is probative of issues in the "penalty phase" of the proceedings, where Johnson has put her role as an allegedly minor player at issue as a mitigating factor. Honken is the only other surviving person who was present during the murders of the five victims; thus, his statements about Johnson's involvement, if reliable—and the court has cited the reasons why they are reliable—are of substantial, perhaps critical, probative value. Again, because the court does not find the evidence unreliable, that evidence also poses relatively little potential for unduly prejudicing Johnson or misleading or confusing the jury. Indeed, because Mr. Vest has previously testified extensively about Honken's statements to him, the defense has a potent means of impeachment available to challenge the reliability of his testimony in this case, should he now "embellish" his testimony regarding Honken's statements about Johnson's role in the offenses.

The court concludes that the challenged evidence meets the statutory standard under § 848(j) for admissibility in the "penalty phase," just as the court concluded that the challenged evidence meets the constitutional standards under the Confrontation Clause and Due Process Clause.

### III. CONCLUSION

As previously stated in the court's brief order dated May 26, 2005 (docket no. 539), and for the reasons explained more fully here, the court denied Johnson's motion, because the court concluded that trifurcation of the proceedings in this case obviates Johnson's confrontation and due process concerns, and because the court found that Mr. Vest's testimony is relevant, is not unreliable, and is not such that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j) (standard for admissibility of "penalty phase" information).

**IT IS SO ORDERED.**

**DATED** this 6th day of June, 2005.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA