# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

ANGELA JOHNSON,

              Defendant.

No. CR 01-3046-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S CHALLENGES TO CAPITAL RESENTENCING HEARING AND THE SECOND SUPERSEDING INDICTMENT AND REQUESTS FOR DISCOVERY**

_____

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................. 2

II.   **LEGAL ANALYSIS** ............................................................ 3
    A.    *The Motion To Preclude A Capital Resentencing Hearing* ................. 3
    B.    *The Omnibus Motion To Dismiss And Strike* ............................... 7
            1.    *The federal death penalty is arbitrary, capricious, and discriminatory* ............................................................... 7
            2.    *The federal death penalty act is "inoperative" under Ring* ........ 9
            3.    *The Indictment failed to meet Fifth Amendment requirements* ............................................................... 10
            4.    *The federal death penalty lacks a structure to make a reasoned choice of penalties* ....................................... 13
            5.    *The federal death penalty poses an unacceptable risk of executing the innocent* .............................................. 16
            6.    *The federal death penalty is contrary to state choices*............. 18
            7.    *The federal death penalty is contrary to evolving standards of decency* ............................................................... 21
            8.    *Summary* ............................................................... 22

    **C.**     *The Motion To Strike Particular Aggravating Factors* ..................... 23

          **1.**     *Propriety of using non-statutory aggravating factors*.............. 23

          **2.**     *Propriety of certain statutory and non-statutory aggravating*

                *factors in this case* ..................................................... 27

    **D.**     *The Motion To Discover Evidence Supporting Prosecution's*

        *Reasons For Not Seeking The Death Penalty* ............................... 29

    **E.**     *The Motion For Discovery To Support A Motion To Strike The*

        *Death Penalty* .................................................................. 33

**III.**     **CONCLUSION** ............................................................................. 37

### I. INTRODUCTION

This capital case is before me on defendant Angela Johnson's first set of motions in anticipation of a resentencing hearing before a new jury, *i.e.*, a "penalty retrial," pursuant to 21 U.S.C. § 848(i)(1)(B) (2005) and the requirements of 21 U.S.C. § 848(g)-(o) (2005). I previously granted, in part, Johnson's § 2255 Motion by vacating her four death sentences and one life sentence for murders in furtherance of a continuing criminal enterprise (CCE murder), in violation of 21 U.S.C. § 848(e), a provision of the Anti-Drug Abuse Act (ADAA). *See Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012). The prosecution then opted for a "penalty retrial," to determine the penalty for Johnson's convictions, rather than withdraw its notice of intent to seek the death penalty, filed pursuant to 21 U.S.C. § 848(h) (2005), and allow the court to set a hearing to impose sentences of life imprisonment without parole, pursuant to 21 U.S.C. § 848(p) (2005). Pursuant to a Scheduling Order (docket no. 858), I set the penalty "retrial" for June 3, 2013, and, *inter alia*, set a deadline of

September 14, 2012, for Johnson to file any facial or as applied challenges to the use of the death penalty in this case.

Johnson filed five motions on the September 14, 2012, deadline: (1) her Omnibus Motion To Dismiss The "Special Findings" From The Second Superseding Indictment And To Strike Notice Of Intent To Seek The Death Penalty (docket no. 864); (2) her Motion To Dismiss Particular Aggravating Factors From The Second Superseding Indictment, And To Strike Particular Aggravating Factors From The Second Notice Of Intent To Seek The Death Penalty, And For Other Relief (docket no. 865); (3) her Motion To Compel Discovery Of Evidence In Support Of United States Attorney's Reasons Not To Seek The Death Penalty, Or, In The Alternative, For In-Camera Review Of The Death Penalty Evaluation Form (docket no. 867); (4) her Motion To Preclude Capital Sentencing Hearing (docket no. 868); and (5) her Motion For Discovery To Support Motion To Strike Death Penalty Based Upon Influence Of Arbitrary Factor[s] Of Race And Gender Of Victim[s] (docket no. 869). I will consider each of these motions in turn, but not in the order in which they appear on the docket. Instead, I will begin with the fourth motion, because, if a capital sentencing hearing must be precluded, any further proceedings will be very different in nature from what is currently anticipated. I will then consider the two motions to dismiss, and, finally, the two discovery motions.

## II.    LEGAL ANALYSIS

### A.    The Motion To Preclude A Capital Resentencing Hearing

In her Motion To Preclude Capital Sentencing Hearing (docket no. 868), Johnson argues that, in 2006, Congress repealed the provision of the Anti-Drug Abuse Act (ADAA) for determining the penalty in capital cases under that Act, 21 U.S.C.

§ 848(i), pursuant to the U.S.A. Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 221, 120 Stat. 192, 231 (2006). She contends that the repealed provision was merely "procedural," so that it was not "saved" by the Savings Statute, 1 U.S.C. § 109; that the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.*, which now provides uniform procedures for determining the penalty for nearly all federal capital offenses, does not permit the empaneling of a new jury to consider the penalty in her ADAA case; and that application of the FDPA procedures would violate the *Ex Post Facto* Clause. The prosecution contends that all of the provisions for determining the penalty in ADAA capital cases are saved by the Savings Statute, because the penalty provided in § 848(e) cannot be fully preserved without also preserving the mechanisms for enforcing it in § 848(g)-(r). In reply, Johnson reiterates her contention that the Savings Statute applies to substance, not procedures, and that the repealed portions of § 848 were procedural. She also argues that cases to the contrary were "wrongly decided."

The Eighth Circuit Court of Appeals has recognized that "the general savings statute, 1 U.S.C. § 109, requires [courts] to apply the penalties in place at the time the crime was committed." *United States v. Smith*, 632 F.3d 1043, 1047-49 (8th Cir. 2011) (quoting *United States v. Brewer*, 624 F.3d 900, 909-10 n.7 (8th Cir. 2010), with internal quotation marks omitted).[1] The Savings Statute "'was enacted to

---

[1] The Savings Statute provides as follows:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute

4

overcome the common law rule that all pending prosecutions abate when a criminal statute is repealed.'" *United States v. Orr*, 636 F.3d 944, 957 (8th Cir. 2011) (quoting *Martin v. United State*s, 989 F.2d 271, 273 (8th Cir. 1993), in turn citing *Warden v. Marrero*, 417 U.S. 653, 660 (1974)). The Savings Statute applies even if the prior act was not repealed *in toto*, but only in part or was only amended. *Id.* at 958. However, the Eighth Circuit Court of Appeals has recognized that the Savings Statute "'does not ordinarily preserve discarded remedies or procedures,'" but only substantive provisions. *Smith*, 632 F.3d at 1048 (quoting *Marrero*, 417 U.S. at 661).

Only two courts have squarely considered whether or not the capital sentencing provisions of the ADAA are "saved" by the Savings Statute, and the Eighth Circuit Court of Appeals is not one of them. *See United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008); *United States v. Hager*, 530 F. Supp. 2d 778 (E.D. Va. 2008). Nevertheless, I agree with the Fourth Circuit Court of Appeals in *Stitt* that Supreme Court case law "leads inexorably to the conclusion that §§ 848(g)-(r) are saved by the Savings Statute." *Stitt*, 552 F.3d at 354. As the *Stitt* court explained, (1) sentencing provisions are "saved" as part of the "prosecution" of a "penalty," and "the repeal of §§ 848(g)-(r) would have the effect of eliminating a previously-available sentencing option, a death sentence, at the resentencing," *id.*; and (2) recognizing the "procedural/substantive" dichotomy under the Savings Statute also recognized by the Eighth Circuit Court of Appeals, *see Smith*, 632 F.3d at 1048, the court in *Stitt* reasoned that, "perhaps more

---

> shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

importantly, . . . the penalty provided in § 848(e) cannot be fully preserved without also preserving the mechanisms for enforcing it, §§ 848(g)-(r)," noting that the existence of those mechanisms was a "constitutionally required condition precedent to imposing § 848(e)'s penalty of a death sentence," *id.* at 354-55. In other words, "because the 'enforcing provisions' of § 848(g)-(r) are both akin to a 'sentencing provision' and also have a constitutionally mandated 'special relation to the accrued right,' the Savings Statute operate[d] to save them against [the defendant]." *Id.* Thus, because "§ 848(i)(1)(B)(iv) provided for the empanelling of a sentencing jury in cases where the original death sentence was later vacated," the district court is allowed to empanel a second jury to reconsider the penalty after the original sentence has been set aside. *Id.*

I believe that the reasoning of the court in *Stitt* is sound and would be embraced by the Eighth Circuit Court of Appeals. I also find that the reasoning and conclusion of the *Stitt* court are plainly applicable here, where Johnson's original death sentences for § 848(e) violations were later vacated in my ruling on her § 2255 Motion. I find *Hagar*, 530 F. Supp. 2d at 782-85, unpersuasive, because it takes a piecemeal approach to determining which of the repealed subsections of § 848 are substantive and which are procedural. Doing so does not properly recognize that all of the repealed subdivisions of § 848 relating to determination of the sentence in capital cases under § 848(e) were constitutionally mandated and had a special relation to the accrued right, as subsequently recognized by the Fourth Circuit Court of Appeals in *Stitt*, 552 F.3d at 355.

Because I am persuaded that the analysis and the result in *Stitt* are correct and applicable here, Johnson's Motion To Preclude Capital Sentencing Hearing (docket no. 868) is denied. This matter will proceed to a "penalty retrial," pursuant to the provisions of former-§ 848(g)-(r), as scheduled, beginning on June 3, 2013.

### B. The Omnibus Motion To Dismiss And Strike

I turn, next, to consideration of Johnson's Omnibus Motion To Dismiss The "Special Findings" From The Second Superseding Indictment And To Strike Notice Of Intent To Seek The Death Penalty (Omnibus Motion) (docket no. 864). The prosecution filed a Resistance (docket no. 886) to this motion,[2] and Johnson filed a Reply (docket no. 893) in further support of it.

Johnson makes seven principal arguments in support of this motion, which I will consider in turn.[3]

### 1. The federal death penalty is arbitrary, capricious, and discriminatory

First, Johnson contends that more than two decades of experience with the federal death penalty has demonstrated that it operates in an arbitrary, capricious, irrational, and discriminatory manner. The prosecution counters that courts have rejected all of the grounds on which Johnson seeks to overturn the federal death penalty. In reply, Johnson argues that the federal death penalty system is "broken,"

---

[2] In various footnotes in its Resistance, the prosecution argues that Johnson's challenges to the Second Superseding Indictment are untimely, pursuant to Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure, because Johnson did not raise them pretrial, but only now, after she was granted a resentencing hearing. Like the prosecution, I will not devote any more discussion to the timeliness of this motion, because it fails on the merits.

[3] Johnson casts almost all of her arguments in this and other pending motions in terms of the "FDPA," but she was convicted, and her penalty phase will be "retried," under the ADAA, specifically, § 848, as it existed prior to the repeal of the penalty determination provisions. However, because neither Johnson nor the prosecution distinguishes between the FDPA and the ADAA when they discuss "the federal death penalty act" or "federal death penalty cases," in this section, at least, I will use "federal death penalty acts" to refer to both the FDPA and the ADAA and the "federal death penalty" to refer to the death penalty under both "federal death penalty acts."

fails to meet the standards for a constitutional capital punishment scheme, and is unconstitutional as applied, essentially asserting that the prosecution is defending a system that is indefensible.

Most of Johnson's specific "arbitrariness" arguments were rejected by the First Circuit Court of Appeals in *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), *cert. denied*, 553 U.S. 1035 (2008), which Johnson blithely ignores here. Specifically, the *Sampson* court rejected "arbitrariness" arguments (1) that the federal death penalty is rarely sought and rarely imposed, because the proper focus is whether "the discretion exercised by juries is guided so as to limit the potential for arbitrariness"; (2) that there is no principled basis for distinguishing between cases in which the federal death penalty is imposed and cases in which it is not, because the case summaries and verdict sheets provided by the defendant, like those on which Johnson also relies, were devoid of essential details to prove lack of principled distinctions;[4] and (3) that there are racial and regional differences in the application of the federal death penalty, because, if the defendant had standing to assert arbitrariness on these bases, where the differences in race and region did not apply to him, he had relied on "bare statistical discrepancies" insufficient to prove either a Fifth Amendment or Eighth Amendment claim, and had shown no adequate basis to attribute the statistical discrepancies to discrimination. *See id.* 23-26; *see also United States v. Rodriguez*, 581 F.3d 775, 815 (8th Cir. 2009) (noting that, in *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), the Court stated that

---

[4] There is an appearance of "arbitrariness" in the cases of Johnson and her co-defendant, Dustin Honken, where Honken, who was tried as the principal, received the death penalty only for the murders of the two child victims, but Johnson, who was tried as an "aider and abettor," received the death penalty for the murders of two of the adult victims as well as the two children. Nevertheless, even that appearance of "arbitrariness" does not reach constitutional proportions. *See United States v. Johnson*, 403 F. Supp. 2d 721, 736 (N.D. Iowa 2005) (denying Johnson's post-trial notices, but noting the defendant's argument about the unfairness of the different sentences).

"to prevail under the Equal Protection Clause, [a defendant] must prove that the decisionmakers in *his* case acted with discriminatory intent" (emphasis in the original)). Because I am persuaded that the analysis and the result in *Sampson* are correct and applicable here, I reject Johnson's similar arguments.

I must add only that Johnson's reliance on similar statistics concerning race and gender of *victims* is unavailing, for essentially the same reasons that the court in *Sampson* found statistics concerning the race and geographical location of the *defendant* were unavailing. The "bare statistics" on which Johnson relies for this part of her argument do not account for other factors sufficiently to demonstrate that the federal death penalty is arbitrary, capricious, or discriminatory. *Cf. id.*

Therefore, Johnson's "arbitrary, capricious, and discriminatory application" argument does not afford a basis for striking down the federal death penalty.

### 2. *The federal death penalty act is "inoperative" under* **Ring**

Next, Johnson argues that the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), has rendered the FDPA inoperative,[5] in the absence of ameliorative action by Congress. She argues that this is so, because there is no *legislatively-selected* method for initiating a capital prosecution in the Act, which gives the prosecutor exclusive authority to allege aggravating factors, and because there is no authority to "fix" the statutory deficiency by submitting aggravating factors to a grand jury, for example, in the form of "special findings." The prosecution argues that, again, Johnson's arguments based on *Ring* have been foreclosed by Supreme Court and Circuit Courts of Appeals precedents. In reply, Johnson argues that her *Ring* argument is a "simple one," that the scheme that the prosecution would have this court endorse is not

---

[5] Johnson has explained, in the context of this argument, that she is using FDPA as an "abbreviation" to refer to both the ADAA scheme, enacted in 1988 (and applicable to her), and the FDPA scheme, enacted in 1994.

the one that Congress enacted, and that Congress must fix the deficiencies with new legislation. She argues that this court should not circumvent the fundamental tenet of separation of powers by endorsing a judicial "fix," but should leave legislating to the legislature.

I find that Johnson's "*Ring*" arguments are, indeed, foreclosed by Eighth Circuit precedent. Specifically, the Eighth Circuit Court of Appeals has rejected an argument that the federal death penalty is unconstitutional following *Ring*, as follows:

> The government charged aggravating factors in the indictment, to be found by the jury, complying with *Ring v. Arizona*, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Since the FDPA does not specifically provide that aggravating factors can be charged in an indictment, Rodriguez maintains the FDPA is unconstitutional under *Ring*. This argument is foreclosed by precedent. *United States v. Purkey*, 428 F.3d 738, 748 (8th Cir. 2005).

*United States v. Rodriguez*, 581 F.3d 775, 816 (8th Cir. 2009).[6] Here, the prosecution also charged aggravating factors in the indictment, to be found by the jury, complying with *Ring*.

Therefore, Johnson's "*Ring*" argument does not afford a basis for striking down the federal death penalty.

### 3. The Indictment failed to meet Fifth Amendment requirements

Johnson's third argument to strike the death penalty, at least in her case, is that, even if the FDPA can be rendered constitutional by a finding by the grand jury of gateway and statutory aggravating factors, the "special findings" in the Second Superseding Indictment against her should be stricken, and the death notice should be dismissed, because the prosecution has not obtained an indictment consistent with the

---

[6] I will address in more detail the import of *Purkey*, on which the court in *Rodriguez*, in part, relied, in the analysis of Johnson's next argument.

requirements of the Fifth Amendment. Johnson argues that the Indictment does not allege any non-statutory aggravating factors; does not state that the "special findings" should subject her to the death penalty or otherwise indicate that the grand jury intended to return an indictment charging a capital offense; and does not allege that the aggravating factors present in this case outweigh the mitigating factors sufficiently to justify imposition of a sentence of death. She argues that, under these circumstances, the Indictment does not comport with the Grand Jury Clause of the Fifth Amendment and does not charge a capital offense. The prosecution argues that, under applicable precedent, it was required to, and did, present the eligibility factors to the grand jury and did allege the eligibility factors in a capital indictment, but it was not required to inform the grand jury that the "special findings" could result in a death sentence. The prosecution also argues that the Constitution does not require that non-statutory aggravating factors be charged or that an indictment include an allegation that there is probable cause to believe that the aggravating factors sufficiently outweigh the potential mitigating factors to justify a death sentence. In reply, Johnson reiterates that contrary authorities miss the point that all aggravating factors, and the weighing of them, must adhere to the requirements of *Ring*, because the weighing of such factors is necessary before the defendant can be sentenced to death.

I find that this argument is also foreclosed by Eighth Circuit precedent. Specifically, in *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), the court rejected the defendant's argument "that his prosecution ran afoul of the indictment clause because the government failed to seek an indictment upon some of the necessary elements of the capital prosecution, namely, the government's non-statutory aggravating factors and the issue of whether the aggravating factors sufficiently outweighed any mitigating factors to justify a sentence of death." 428 F.3d at 748. The court explained its reasons for rejecting this argument, as follows:

"[T]he same facts that the Sixth Amendment requires to be proven to the petit jury beyond a reasonable doubt in state and federal prosecutions must also be found by the grand jury and charged in the indictment in federal prosecutions." *[United States v.] Allen*, 406 F.3d [940,] 943 [(8th Cir. 2005) (en banc)]. For that reason, *Allen* held that to comport with the fifth amendment "at least one statutory aggravating factor and the mens rea requirement [must] be found by the grand jury and charged in the indictment" in a prosecution under the FDPA. *Id*. Mr. Purkey's superseding indictment satisfies both of these requirements.

The indictment must charge at least one of the statutory aggravating factors that is ultimately found by the petit jury because "that is what is required to elevate the available statutory maximum sentence from life imprisonment to death." *Id*. In other words, including that factor in the indictment is required to make the defendant eligible for the death penalty. *See United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003), *cert. denied*, 543 U.S. 1004, 125 S.Ct. 608, 160 L.Ed.2d 465 (2004). We now make clear what *Allen* merely implied: "There is no requirement that the indictment allege all of the factors that might be weighed by the jury when deciding whether to impose a death sentence." *Higgs*, 353 F.3d at 299. Non-statutory aggravating factors do not increase the maximum punishment to which a defendant is subject. They are neither sufficient nor necessary under the FDPA for a sentence of death. Their purpose is merely to aid the sentencer "in selecting the appropriate sentence from the available options," *id*. at 298, "'on the basis of the character of the [defendant] and the circumstances of the crime,'" *id*. (quoting *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994)).

Further, it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a "consideration," 18 U.S.C. § 3593(e),—that is, the lens through which the jury must

12

focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." *Id.*

*Purkey*, 428 F.3d at 749-50. This reasoning applies with equal force to the charging of a capital offense under the ADAA, which used essentially identical provisions for the consideration of statutory and non-statutory aggravating factors in the determination of a death penalty. Also, as in *Purkey*, the Indictment in Johnson's case met the aggravating factor and *mens rea* requirements that satisfied the Fifth Amendment. *Id.*

Therefore, Johnson's "insufficiency of the Indictment" argument does not afford a basis for ruling that the death penalty is unavailable in this case.

### 4. *The federal death penalty lacks a structure to make a reasoned choice of penalties*

Johnson's next argument is that the federal death penalty must be overturned, because it fails to provide a structure that permits jurors to make a reasoned choice between execution and a sentence of life in prison without the possibility of release. Johnson argues that the penalty phase involves such a "mélange" of concepts, factors, and standards, including a departure from the traditional "unanimity" requirement, that it is unreasonable to expect even the most conscientious and reasonably intelligent jurors to parse through them and come out with an understanding of the process or a principled verdict. She argues that this "incomprehensibility" presents a very real possibility of confusion that makes the federal death penalty unconstitutional. She cites various studies that she argues demonstrate that actual jurors in death penalty cases did not understand their duties. The prosecution contends that Johnson's argument is contrary to the crucial assumption of the system of trial by jury, which is that jurors will follow the instructions given to them by a trial judge. The prosecution contends that Johnson's argument is also contrary to the standard that instructions in a capital

case are constitutionally defective only if there is a reasonable likelihood that they misled the jury into sentencing the defendant to death. The prosecution argues that courts have rejected the studies on which Johnson relies. Finally, the prosecution argues that Johnson's claim as to the likelihood that instructions will mislead the jury is not ripe until the jury is instructed and a verdict is rendered.

I have found about a dozen cases addressing, and almost uniformly rejecting, an argument like Johnson's that the federal death penalty acts are unconstitutional, because they are incomprehensible to jurors and result in the arbitrary application of the death penalty. I concur in the well-reasoned rejection of this argument by Judge Slomsky of the United States District Court for the Middle District of Pennsylvania in *United States v. Hammer*, No. 4:96-CR-239, 2011 WL 6020164 (M.D. Pa. Dec. 1, 2011) (slip op.):

> "[T]here is nothing in the FDPA that can be said to raise an insuperable barrier to informed sentencing. To the extent that aggravating and mitigating factors are abstract concepts, they are capable of being rendered precise and concrete in the course of crafting instructions to the sentencing jury." *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 449–50 (E.D. Pa. 2001). Whether a penalty phase instruction is constitutional depends on whether it has a "common-sense core of meaning . . . that criminal juries [are] capable of understanding." *Tuilaepa v. California*, 512 U.S. 967, 975, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1990) (internal quotations omitted). There is no justification for the Court to hold, prior to trial, that a sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel. *United States v. Regan*, 228 F. Supp. 2d 742, 748 (E.D. Va. 2002); *Llera Plaza*, 179 F. Supp. 2d at 450.
>
> Counsel for Hammer and counsel for the Government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations. Defendant offers no evidence that can overcome the assumption that juries will follow the

instructions given to them during the penalty phase hearing. *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *United States v. Jass*, 569 F.3d 47, 55 n. 4 (2d Cir. 2009); *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989).

Accordingly, the Court finds no merit in Defendant's argument and agrees with other courts that have considered substantially the same argument on the comprehensibility and constitutionality of the FDPA and have rejected it. *United States v. Taylor*, 635 F. Supp. 2d 1243, 1246–49 (D.N.M. 2009); *United States v. Green*, No. 06–19–R, 2008 WL 4000901, at *1–2 (W.D. Ky. Aug. 26, 2008); *United States v. Duncan*, No. 07–23–N–EJL, 2008 WL 544847, at *1–2 (D. Idaho Feb. 26, 2008); *United States v. Sablan*, No. 00–00531–WYD, 2006 WL 1028780, at *7–8 (D. Colo. Apr. 18, 2006); *United States v. Fell*, 372 F. Supp. 2d 753, 756 (D. Vt. 2005); *United States v. Perez*, No. 02-7, 2004 WL 935260, at *2–3 (D. Conn. Apr. 29, 2004); *United States v. Mikos*, No. 02–137–1, 2003 WL 22110948, at *17–19 (N.D. Ill. Sept. 11, 2003); *United States v. Regan*, 228 F. Supp. 2d 742, 746–47 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 449–50 (E.D. Pa. 2001).

*Hammer*, 2011 WL 6020164 at *2 (footnote omitted).

I also join those courts rejecting the empirical studies on which Johnson's argument principally relies. As Judge William P. Johnson of the United States District Court for the District of New Mexico recently explained,

In particular, Judge Pollack's analysis [in *United States v. Llera Plaza*, 179 F. Supp. 2d 444 (E.D. Pa. 2001),] went straight to the foundation of defendant's arguments which were based on empirical studies (much as they are here), noting that:

the studies do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic

15

> "incomprehensibility" as to render them incapable of clarification through adequate jury instructions such as those to be crafted in the instant case, if a sentencing hearing is required. The studies are thus insufficient to support the defendant's argument.
>
> 179 F. Supp. 2d at 450 n.5; *see also U.S. v. Fell*, 372 F. Supp. 2d 753, 756 (D. Vt. 2005) (characterizing defendants' claim in *Llera* to be "well analyzed, and rejected").

*United States v. Taylor*, 635 F. Supp. 2d 1243, 1247-48 (D.N.M. 2009). To this analysis, I add that, at least as Johnson has characterized the results of one study, the statistics that she argues show that capital jurors "misunderstand what they are supposed to do during the penalty phase of a death penalty trial" may suggest only that capital jurors weighed aggravating and mitigating factors, and particularly the nature of the crime itself, differently than capital defendants might have hoped. *See* Defendant's Brief In Support Of Omnibus Motion at 107-08 (characterizing the findings of a study of 57 capital jurors from 19 death penalty trials conducted under California law and described in C. Haney, L. Sontag, and S. Constanzo, *Deciding to Take a Life: Capital Juries, Sentencing Instructions, and the Jurisprudence of Death*, 50 JOURNAL OF SOCIAL ISSUES 149-76 (1994)).

Therefore, Johnson's "incomprehensibility of the death penalty acts" or "lack of a structure to make a reasoned choice of penalties" argument does not afford a basis for overturning the federal death penalty acts or striking the death penalty in her case.

### 5. *The federal death penalty poses an unacceptable risk of executing the innocent*

Johnson's fifth argument to overturn or strike the death penalty in her Omnibus Motion is that the federal death penalty acts present an unacceptable risk of executing the innocent. Somewhat more specifically, she argues that, in light of overwhelming evidence that continued enforcement of the federal death penalty will lead to the

execution of a meaningful number of innocent people, the federal death penalty should be declared unconstitutional. She points to the increasing number of innocent defendants released from death row in recent years. The prosecution argues that the statistical or theoretical possibility that an innocent defendant might be executed has never been recognized as a basis for holding that the death penalty is unconstitutional.

I find that this argument is foreclosed by Eighth Circuit precedent, specifically, by *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2009), the decision on the appeal of Johnson's co-defendant, Dustin Honken. As the Eighth Circuit Court of Appeals explained in *Honken*,

> Honken urges this court to declare the death penalty unconstitutional because of the possibility innocent people may be executed. Honken himself does not claim to be one of those innocent people he fears may be wrongly executed. Instead, Honken makes a policy argument against the death penalty generally. Honken cites a district court decision from the Southern District of New York—later reversed by the Second Circuit—which held the FDPA unconstitutional. *See United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y. 2002), *rev'd*, 313 F.3d 49 (2d Cir. 2002). Reversing and holding the FDPA constitutional, the Second Circuit observed,
>
> > the argument that innocent people may be executed—in small or large numbers—is not new; it has been central to the centuries-old debate over both the wisdom and the constitutionality of capital punishment, and binding precedents of the Supreme Court prevent us from finding capital punishment unconstitutional based solely on a statistical or theoretical possibility that a defendant might be innocent.
>
> *Quinones*, 313 F.3d at 63. "Since 1878, the Supreme Court has upheld challenges to death penalty statutes based upon the Due Process Clause as well as the Eighth Amendment."

> *Id.* at 65 (citing cases). Specifically, the Supreme Court in
> *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L.
> Ed. 2d 346 (1972), "was presented with, considered, and
> declined to adopt the argument that capital punishment
> unconstitutionally deprives innocent persons who have been
> sentenced to death of the opportunity to exonerate
> themselves." *Id.* at 65–66. Under our Constitution, the
> government explicitly may, with due process of law, deprive
> a person of life. U.S. Const. amend. V. Honken's
> argument is a policy matter for Congress. We reject
> Honken's invitation to hold the death penalty
> unconstitutional based on the possibility innocent people may
> be executed.

*Honken*, 541 F.3d at 1173-74. Like Honken, Johnson does not argue that she is one of those innocents who may be wrongly executed. *Id.* at 1173. Like Honken, then, Johnson raises a policy argument that is more properly presented to Congress than to the courts. *Id.* at 1174.

Therefore, Johnson's "risk of executing the innocent" argument does not afford a basis for overturning the federal death penalty acts or striking the death penalty in her case.

### 6. *The federal death penalty is contrary to state choices*

Johnson's sixth argument in her Omnibus Motion is that the federal death penalty should be stricken in her case, because the people of the State of Iowa have opted not to allow capital punishment in their state. Johnson argues that the federal government may not proceed with a federal capital prosecution in a state, such as Iowa, that does not authorize capital punishment. Somewhat more specifically, she argues that the special findings in the Second Superseding Indictment and the death notice should be stricken, because (1) the death penalty is cruel and unusual punishment within the meaning of the Eighth Amendment in that it is not available in the State of Iowa; and, (2) the recent federalization of essentially state-law offenses and the corresponding

18

increase in the penalty beyond what is possible for a traditionally state-law offense raise profound federalism concerns that violate the Ninth and Tenth Amendments. In its resistance, while the prosecution rejects the scholarly authority on which Johnson relies, it also asserts that Johnson's arguments are at "loggerheads" with "modern" Supreme Court precedent and have not been adopted by any court. In reply, Johnson argues that the prosecution has not addressed the serious constitutional issues she raises that the application of the death penalty to a traditional state law crime, not punishable by death, violates the Eighth, Ninth, and Tenth Amendments.

Again, I am not the first federal judge to address such arguments. Rather, just over a year ago, Judge William K. Sessions III, of the United States District Court for the District of Vermont, rejected essentially the same arguments in *United States v. Jacques*, No. 2:08-CR-117, 2011 WL 3881033 (D. Ver. Sept. 2, 2011) (slip op.), noting that, more than a decade earlier, Judge Kay, of the United States District Court for the District of Hawaii had done the same in *United States v. Tuck Chong*, 123 F. Supp. 2d 563 (D. Haw. 1999). As Judge Sessions explained, to the extent that a defendant complains about the "federalization" of offenses as violating the Tenth Amendment, that argument fails, because the federal government is acting within its constitutionally delegated power to regulate the channels and instrumentalities of interstate commerce under the Commerce Clause. *Jacques*, 2011 WL 3881033 at *1; *see also Gonzales v. Raich*, 545 U.S. 1, 22 (2005) (reaffirming that federal drug trafficking laws are within Congress's power to regulate interstate commerce). Judge Sessions also rejected the argument that a Tenth Amendment violation arises simply because the United States government, by virtue of federal legislation, has chosen to make the death penalty applicable for federal crimes, even in states that do not authorize capital punishment under state law, because it ignores the doctrine of dual

sovereignty.  *Id*. at *2 (citing *Tuck Chong*, 123 F. Supp. 2d at 567, and *United States v. Davis*, 906 F.2d 829, 832 (2d Cir. 1990)).  As Judge Sessions explained,

> Accordingly, consistent with the Tenth Amendment and the doctrine of dual sovereignty, "[t]he federal government may, independent of the State of [Vermont], determine the appropriate punishment for a crime against the United States." *Tuck Chong*, 123 F.Supp.2d at 567; *see also United States v. O'Reilly*, No. 05–80025, 2007 U.S. Dist. LEXIS 62056, 2007 WL 2420830 (E.D. Mich., Aug. 23, 2007) (Rejecting similar Tenth Amendment claim and commenting "[w]hile Michigan is free to prohibit the death penalty for state-charged crimes, this federal Court cannot prohibit imposition of the death penalty when authorized by federal law for federally-charged crimes[.]").  That the Tenth Amendment does not prohibit the United States from prosecuting defendants in federal court for crimes punishable by death under federal statutes, even within states that do not authorize capital punishment as a matter of state law, undercuts Jacques' assertion that such prosecutions are "illegal" and therefore "unusual" for Eighth Amendment purposes.

*Jacques*, 2011 WL 3881033 at *3.  Finally, Judge Sessions rejected an argument, similar to Johnson's, that a state-by-state standard should apply when evaluating Eighth Amendment claims, as creating more and more problematic constitutional concerns than it would solve, because such a state-by-state standard would aggravate regional differences in the application of a national standard.  *Id*. at *3-*5.  He also noted that nothing in Supreme Court decisions suggested that federalism requires re-tailoring the Eighth Amendment in each state to test federal death sentences by local standards.  *Id*. at *4 (citing *United States v. Fell*, 571 F.3d 264, (2d Cir. 2009) (Raggi, J., concurring in the denial of rehearing en banc).  For these reasons, Judge Sessions rejected the defendant's argument that it is unconstitutional to seek the federal death penalty in a state that does not authorize capital punishment.  *Id*. at *6.

I concur in the well-reasoned rejection of Johnson's Eighth Amendment and Tenth Amendment arguments in *Jacques* and *Tuck Chong*. I find nothing in Johnson's addition of references to the Ninth Amendment, which establishes that enumeration of rights in the federal Constitution "shall not be construed to deny or disparage others retained by the people," U.S. CONST., amend IX., that undermines the reasoning of those opinions, and Johnson has not explained how the Ninth Amendment adds anything to her arguments based on the Tenth Amendment.

Therefore, Johnson's "contrary to state choices" argument does not afford a basis for overturning the federal death penalty acts or striking the death penalty in her case.

### 7. *The federal death penalty is contrary to evolving standards of decency*

Johnson's final argument in her Omnibus Motion is that evolving standards of decency have reached a point where capital punishment is no longer constitutional. Her argument on this point appears to be more of a reiteration and summary of her prior arguments than it is a separate argument. Indeed, the prosecution apparently understands her argument to be that the federal death penalty is cruel and unusual. Johnson has made no attempt to clarify this argument in her reply.

As the Eighth Circuit Court of Appeals has explained, when it considered a challenge to Missouri's lethal injection protocol on Eighth Amendment grounds,

> The Eighth Amendment prohibits the unnecessary and wanton infliction of pain through torture, barbarous methods, or methods resulting in a lingering death. *See Gregg [v. Georgia]*, 428 U.S. [153,] 170, 96 S. Ct. 2909 [(1976)]. The Eighth Amendment is interpreted in a flexible manner, "'acquir[ing] meaning as public opinion becomes enlightened by a humane justice.'" *Id*. at 171, 96 S. Ct. 2909 (quoting *Weems v. United States*, 217 U.S. 349, 378, 30 S. Ct. 544, 54 L. Ed. 793 (1910)). "'The Amendment

> must draw its meaning from the evolving standards of decency that mark the progress of a maturing society'" and "accord with 'the dignity of man.'" *Id*. at 173, 96 S. Ct. 2909 (quoting *Trop v. Dulles*, 356 U.S. 86, 100–01, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality)).

*Taylor v. Crawford*, 487 F.3d 1072, 1082 (8th Cir. 2007). The Supreme Court has explained that the "evolving standards of decency" are the standards for what the Eighth Amendment's "cruel and unusual punishment" clause prohibits, "'because "[t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change."'" *Graham v. Florida*, ___ U.S. ___, 130 S. Ct. 2011, 2021 (2010) (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008), in turn quoting *Furman v. Georgia*, 408 U.S. 238, 382 (1972) (Burger, C.J., dissenting))). However, although the Supreme Court has held that the death penalty is "cruel and unusual," when applied to certain defendants, for certain crimes, or in certain forms, it has never held that the death penalty is *per se* "cruel and unusual." Where Johnson's other challenges to the federal death penalty have failed, it is difficult to discern any basis for her argument that, in combination, the circumstances that she has identified demonstrate that "evolving standards of decency" now bar the death penalty.

Therefore, Johnson's "evolving standards of decency" argument does not afford a basis for overturning the federal death penalty acts or striking the death penalty in her case.

### 8.    *Summary*

Johnson's Omnibus Motion To Dismiss The "Special Findings" From The Second Superseding Indictment And To Strike Notice Of Intent To Seek The Death Penalty (Omnibus Motion) (docket no. 864) is denied in its entirety.

## C.     The Motion To Strike Particular Aggravating Factors

I turn from Johnson's challenges to the death penalty to her challenge to particular aggravating factors in her Motion To Dismiss Particular Aggravating Factors From The Second Superseding Indictment, And To Strike Particular Aggravating Factors From The Second Notice Of Intent To Seek The Death Penalty, And For Other Relief (Motion To Dismiss Particular Aggravating Factors) (docket no. 865). Somewhat more specifically, Johnsons seeks the following relief in this motion: (1) an order striking the non-statutory factors set forth in the Second Notice of Intent To Seek The Death Penalty (Second Notice of Intent) (docket no. 141); and (2) an order striking or modifying certain statutory and non-statutory aggravating factors set forth in the Second Superseding Indictment (docket no. 233) and/or the Second Notice of Intent, or, in the alternative, directing the government to provide further information regarding the factual basis for imposing the death penalty in this case, for example, via a hearing, to demonstrate the particular relevance and reliability of the evidence to be offered in support of such aggravating factors. I will consider these requests for relief in turn.

### 1.     Propriety of using non-statutory aggravating factors

Johnson argues that the non-statutory aggravating factors must be stricken from the Second Notice Of Intent, because the FDPA does not authorize the utilization of non-statutory aggravating factors, with the possible exception of victim-impact evidence. She relies on what she asserts is a contradiction between 18 U.S.C. § 3592(c), which allows consideration of 16 specific aggravating factors and "any other aggravating factor for which notice has been given," and 18 U.S.C. § 3591(a), which provides that a defendant may be sentenced to death only after consideration by the jury of "the factors set forth in § 3592. . . ." She argues that non-statutory factors may not be considered by a jury because they are not—and could not be—set forth in § 3592.

She also argues that non-statutory aggravating factors do not constitutionally limit and guide the discretion of the jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments. In essence, she argues that construing § 3592(c) as authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital proceedings precisely the uncertainty and disparate case results that the Supreme Court found to violate the Eighth Amendment. Finally, she argues that permitting the Department of Justice (DOJ) to define non-statutory aggravating circumstances after the crime but before trial violates the ban on *ex post facto* laws.

The prosecution responds that Johnson relies on purported "contradictions" in the FDPA, but that the ADAA penalty provisions are applicable here and expressly authorize consideration of non-statutory aggravating factors.[7] The prosecution also argues that the use of non-statutory aggravating factors is proper to facilitate the individualized determination of the appropriate sentence on the basis of the fullest information possible concerning the defendant's life and characteristics, but only the statutory aggravating factors determine whether or not the defendant is eligible for the death penalty. The prosecution also argues that courts have rejected Johnson's argument that *Ring* and other Supreme Court decisions require presentation of non-statutory aggravating factors to a grand jury.

In reply, Johnson simply ignores the prosecution's argument that the ADAA, not the FDPA, is the controlling statute here. She also recasts the prosecution's argument to be that the prosecution is allowed to present the fullest range of information in the penalty phase, then counters that argument by pointing to the "unfair prejudice,"

---

[7] The prosecution's first argument is actually that this motion is premature, but I will address that argument, below, in § II.C.2., beginning on page 26.

"confusion of issues," and "misleading the jury" limitations on penalty phase evidence under the FDPA.

Whatever the merits of Johnson's argument about the lack of authorization to use non-statutory aggravating factors in the FDPA—a question on which I take no position[8]—it has no relevance here, where I concluded, above, in my ruling on Johnson's Motion To Preclude Capital Sentencing Hearing (docket no. 868), that this matter will proceed to a "penalty retrial," pursuant to the provisions of former-§ 848(g)-(r). The pertinent provisions of § 848, specifically, § 848(h)(1)(B), § 848(j), and § 848(k), expressly permit the use of and require the jurors' consideration of non-statutory aggravating factors for which notice has been given.

Moreover, the Eighth Circuit Court of Appeals expressly considered and rejected the arguments that Johnson now asserts in a pre-*Ring* decision in *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002). In *Allen*, the court rejected the defendant's contention that the use of non-statutory aggravating factors failed to adequately limit and guide the sentencing discretion of the jury in violation of Supreme Court decisions and the Eighth Amendment. *Allen*, 247 F.3d at 757. The court concluded that *statutory* aggravating factors are those that "channel the sentencer's discretion because they are the circumstances which make a defendant eligible for the death penalty," but "[t]he primary purpose of the nonstatutory aggravating factors . . . is to allow for the individualized determination of whether a death sentence is justified for a particular defendant; that is, they help to inform the

---

[8] I believe that the Eighth Circuit Court of Appeals *has* taken a position on the issue, however, concluding that the FDPA "explicitly allows" the use of non-statutory aggravating factors. *See United States v. Allen*, 247 F.3d 741, 757 & n.3 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002) (vacated and remanded for reconsideration in light of *Ring v. Arizona*, 536 U.S. 584 (2002)). I think that it is likely that the Eighth Circuit Court of Appeals would reiterate this position post-*Ring*.

selection decision." *Id.* The court also rejected the defendant's argument that allowing prosecutors to propose non-statutory aggravating factors impermissibly delegated legislative power, concluding that the limitations on non-statutory aggravating factors, arising from due process and a district judge's duty to screen for irrelevant and unduly prejudicial information, "provide intelligible principles which constrain a prosecutor's discretion such that the delegation is not unconstitutional." *Id.* at 758.[9] Finally, the court in *Allen* rejected the defendant's argument that allowing non-statutory aggravating factors violates the constitutional prohibition against *ex post facto* laws. *Id.* at 759. The court explained,

> We reject Allen's argument, however, because the statutes under which he was convicted make clear that a sentence of death is authorized, and nonstatutory aggravating factors are not used to determine *eligibility* for the death penalty. Thus, proposing nonstatutory aggravating factors to the jury does not in any way alter the definition of the underlying crime for which Allen was convicted, nor does it increase the punishment to which Allen is subjected. *See Walton v. Arizona*, 497 U.S. 639, 648, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990) (finding that aggravating circumstances are not separate penalties or offenses); *Lewis [v. Jeffers]*, 497 U.S. [764,] 782, 110 S.Ct. 3092 (1990) (finding that aggravating circumstances are not elements of any offense).

*Allen*, 247 F.3d at 759 (emphasis in the original).

Although *Allen* was subsequently vacated and remanded by the Supreme Court for reconsideration in light of *Ring*, *see Allen v. United States*, 536 U.S. 953 (2002) (vacating and remanding for reconsideration in light of *Ring v. Arizona*, 536 U.S. 584 (2002)), the Fourth Circuit Court of Appeals has embraced the same conclusions and

---

[9] Thus, Johnson's argument that due process, reliability, and relevance limitations on evidence in capital sentencing proceedings preclude the consideration of non-statutory aggravating factors, generally, is a red herring.

the same reasoning expressed in *Allen* in a post-*Ring* decision. *See United States v. Higgs*, 353 F.3d 281, 320-22 (4th Cir. 2003); *see also United States v. Lightly*, 616 F.3d 321, 367- (4th Cir. 2010) (also concluding that non-statutory aggravating factors do not increase the punishment and, instead, facilitate the individualized determination of the appropriate sentence, citing *Higgs*, 353 F.3d at 298-99). Moreover, since *Ring*, the Eighth Circuit Court of Appeals has repeatedly held that non-statutory aggravating factors do not increase the maximum punishment to which a defendant is subject and "'are neither sufficient nor necessary under the FDPA [or ADAA] for a sentence of death.'" *Rodriguez*, 581 F.3d at 816 (quoting *Purkey*, 428 F.3d at 749).

Thus, I conclude that, if presented with Johnson's present arguments, the Eighth Circuit Court of Appeals would reject them, as it did in *Allen*, even post-*Ring*. The prosecution may and has properly asserted non-statutory aggravating factors in its Notice Of Intent To Seek The Death Penalty, and the jurors not only may but must consider those non-statutory aggravating factors for which notice has been given in the course of the individualized determination of the appropriate penalty for a particular defendant.

This part of Johnson's Motion To Dismiss Particular Aggravating Factors is denied.

### 2. *Propriety of certain statutory and non-statutory aggravating factors in this case*

The second part of this motion is Johnson's contention that certain statutory and non-statutory aggravating factors set forth in the Second Superseding Indictment and/or the Second Notice of Intent must be stricken or clarified. Johnson argues that some of the aggravating factors alleged in this case should be dismissed as vague, duplicative, unascertainable, lacking factual support, or otherwise not relevant to a jury's determination of the appropriate sentence; that others, even if arguably relevant, are

unfairly prejudicial; and that still others are so remote as to be irrelevant to the sentencing determination that may ultimately be made by a jury in this case. She argues that I have the authority to determine, as a matter of law, at this point in the proceedings, whether certain proposed factors constitute proper "aggravating factors" that would justify the imposition of a sentence of death, and that I should strike specific aggravating factors for the failings identified above. She also argues that, at the very least, I should exercise my gatekeeper function to determine that the prosecution can meet the "relevance" and "heightened reliability" requirements of a capital case to prove them, by holding an evidentiary hearing or requiring an offer of proof identifying supporting evidence.

The prosecution's initial response to this entire motion was that the motion is premature and a waste of the parties' and court's time and resources, because it was filed before the prosecution's October 1, 2012, deadline to file a third notice of intent to seek the death penalty, and the defendant's November 1, 2012, deadline to challenge any third notice. The prosecution's Third Amended Notice Of Intent To Seek The Death Penalty (Third Notice Of Intent) (docket no. 879) was, indeed, filed on October 1, 2012. In reply, Johnson argues that this motion is a facial and as-applied challenge to the aggravating factors, so that it was filed by the appropriate deadline of September 14, 2012. She argues that briefing would have been simplified if the prosecution had agreed to file any third notice two weeks before her first motion deadline, as she proposed, but the prosecution did not agree to do so.

Bickering aside, it is clear to me that much, if not all, of the second part of Johnson's Motion To Dismiss Particular Aggravating Factors is now mooted by the prosecution's filing of a Third Notice Of Intent. This is so, because the Third Notice Of Intent narrows not only the statutory aggravating factors on which the prosecution intends to rely at the "penalty retrial" from those alleged in the Second Superseding

Indictment, but provides additional identification of the factual basis for both statutory and non-statutory aggravating factors as compared to the Second Notice Of Intent (docket no. 141).

Therefore, this part of Johnson's Motion To Dismiss Particular Aggravating Factors is denied as moot, without prejudice to timely reassertion as to the Third Notice Of Intent.

### D.    The Motion To Discover Evidence Supporting Prosecution's Reasons For Not Seeking The Death Penalty

The penultimate motion before me is Johnson's Motion To Compel Discovery Of Evidence In Support Of United States Attorney's Reasons Not To Seek The Death Penalty, Or, In The Alternative, For In-Camera Review Of The Death Penalty Evaluation Form (Motion To Discover Reasons) (docket no. 867). Somewhat more specifically, this motion seeks discovery of any and all evidence in support of the United States Attorney's reasons not to seek the death penalty, or, in the alternative, for an *in camera* review of the death penalty evaluation form submitted by the United States Attorney to the Attorney General's Capital Case Review Committee. She argues that, because she has never been asked to make a presentation to the Committee, as required by the Death Penalty Protocol in the United States Attorneys' Manual, at least not after I set aside the original penalty phase verdict, the only reasonable conclusion is that the United States Attorney did not seek the death penalty in the evaluation form and identified evidence supporting mitigating factors leading to that recommendation. She clarifies that she is not seeking the evaluation form itself, but the supporting evidence, which she argues is clearly *Brady* material. In the alternative, she asks that I conduct an *in camera review* of the evaluation form and prosecution memorandum and order production of any non-privileged *Brady* material contained or referenced in them.

The prosecution argues that Johnson's chain of reasoning is flawed. First, the prosecution contends that it was not required to offer Johnson the opportunity to make a presentation to the Capital Case Review Committee after I set aside the penalty phase verdict, because the Attorney General has already authorized the death penalty in her case, and the present proceeding is a "penalty retrial," that is, a *new* sentencing hearing, pursuant to § 848(i)(1)(B), which does not require a "redo" of the death authorization process. The prosecution also argues that the Manual does not confer any substantive rights on defendants; that there is no foundation for the assumption that the United States Attorney recommended to the Attorney General not to seek the death penalty after I ordered a "penalty retrial"; that the United States Attorney's Office will not reveal any such recommendation to the defendant; that Johnson is speculating that any communication between the United States Attorney's Office and the DOJ or Attorney General would contain or identify exculpatory evidence; that Johnson is only entitled to exculpatory evidence, not privileged documents that may reference such evidence; and that submissions by the United States Attorney's Office to the DOJ or Attorney General are protected by attorney-client, work product, and deliberative process privileges.

In reply, Johnson asserts that she is not seeking any privileged information, only *Brady* evidence mentioned in the prosecution's memorandum to the Attorney General. She also argues that the prosecution's contention that she is not entitled to make a submission to the Attorney General at this procedural juncture is contrary to statements of Barry Sabin, Deputy Assistant Attorney General, to the Senate Judiciary Committee's Subcommittee on the Constitution on June 27, 2007, that defense counsel is always informed that the Committee will consider "additional information" favorable to the defendant, even if the Attorney General has already made an adverse

determination to seek the death penalty. She argues that the evidence adduced in the § 2255 proceedings is such "additional information."

Taking Johnson's last point first, I see nothing in the Deputy Assistant Attorney General's statement that defense counsel is informed that the Committee will consider "additional information," even after the Attorney General has decided to seek the death penalty, that contradicts the prosecution's assertion that there is no right to a complete "redo" of the death penalty authorization procedure, including a requirement to invite the defendant's counsel to make a mitigation presentation to the Committee. Furthermore, Johnson does not assert that she was not informed that she could attempt to submit additional information to the Committee after the death penalty was authorized; indeed, she is clearly aware that she could do so.

Second, Johnson's assumptions that the United States Attorney has made a recommendation to the Attorney General not to seek the death penalty on the "penalty retrial" and that any such recommendation relied on mitigating evidence of which she is not already aware is plainly flawed. Indeed, contrary to Johnson's arguments, *where there is no requirement that the entire death penalty authorization process be "redone" after a "penalty retrial" was ordered*, Johnson's assumptions that such a recommendation not to seek the death penalty was made or that any evaluation, if made, contained or identified mitigating evidence, is based on the rankest of speculation.

Finally, under the circumstances, even requiring production of mitigating evidence identified in any death penalty evaluation form or supporting memorandum, rather than the form and memorandum themselves, would violate the deliberative process and work product privileges. The Eighth Circuit Court of Appeals has explained that "opinion work product . . . encompasses a lawyer's opinions, conclusions, mental impressions, and legal theories," and is entitled to substantially

more protection than non-opinion work product. *In re Grand Jury Proceedings, G.S., F.S.*, 609 F.3d 909, 913 (8th Cir. 2010). Similarly, the Seventh Circuit Court of Appeals has recognized that the "deliberative process" privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004). The purpose of the "deliberative process" privilege is to protect "frank discussion of legal and policy matters [that are] essential to the decision-making process of a government agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). As the Ninth Circuit Court of Appeals concluded, whether or not the death penalty authorization process created by the Manual is a "critical stage" of capital proceedings, a capital defendant is still not entitled to the death penalty evaluation form or the prosecution memorandum supporting it, because those documents are protected by the deliberative process and work product privileges, even in a "critical stage." *United States v. Fernandez*, 231 F.3d 1240, 1248 (9th Cir. 2000). The same would be true, even if another "authorization process" were required before a penalty phase "retrial."

Moreover, Johnson's motion to discover mitigating evidence *identified in* the evaluation form and memorandum, rather than the form and memorandum themselves, is equally unavailing. The inevitable identification of the evaluation form or memorandum as the source describing certain mitigating evidence would, likewise, expose the lawyer's opinions, conclusions, mental impressions, and other legal theories, as well as chill the frank discussion of legal and policy matters essential to the decision-making process to determine whether or not to seek the death penalty. While Johnson contends that she is only seeking non-privileged *Brady* material identified in the form and the memorandum, for example, as identified by the court after *in camera* review, an order compelling production of certain information after such an *in camera* review would necessarily indicate that it had been part of the prosecutor's form or

memorandum, thus disclosing or strongly suggesting the importance of such material to the prosecutor's evaluation of the case. Even under the lower standard applicable to non-opinion work product, Johnson would be required to show "'substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *In re Grand Jury Proceedings, G.S., F.S.*, 609 F.3d at 913 (quoting *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007)). Johnson cannot demonstrate that she has no access to substantially equivalent—or even identical—*Brady* material, not subject to any privilege, from the discovery file in this case and all of the evidence produced in the previous trial and the § 2255 proceedings. Under the circumstances, it seems likely to me that the United States Attorney's evaluation of the mitigating evidence, at least the United States Attorney's identification of the most significant mitigating evidence, presented in her trial and her § 2255 proceedings is *precisely* what this discovery request seeks.

Therefore, Johnson's Motion To Discover Reasons (docket no. 867) is denied in its entirety.

### E. The Motion For Discovery To Support A Motion To Strike The Death Penalty

The last motion now before me is Johnson's Motion For Discovery To Support Motion To Strike Death Penalty Based Upon Influence Of Arbitrary Factor[s] Of Race And Gender Of Victim[s] (Motion For Discovery To Support Motion To Strike) (docket no. 869). Johnson argues that she is one of two Caucasian, American-born female defendants to be denied an opportunity to plead guilty to a less-than-death sentence prior to trial. She represents that she will attempt to establish that the DOJ authorizes death prosecutions at a significantly higher rate where the defendant was non-Caucasian and/or the victim was white and/or female. In order to do so, she seeks

an order compelling production of various kinds of information from the DOJ and the United States Attorney's Office concerning all cases arising out of the Eighth Circuit, including her own case, in correspondence that was sent pursuant to certain provisions of the United States Attorney Manual (Manual) or any other provisions of the DOJ death-penalty protocol.  She contends that she has mustered some evidence that the government has eschewed prosecution of, or, in this case, the death penalty for, similarly-situated offenders, including evidence that similarly-situated non-Caucasian defendants, some charged with what Johnson describes as "far worse offenses," were permitted to plead guilty to a life sentence, rather than face the death penalty.

The prosecution argues that Johnson has not made the predicate showing for discovery, because she has not shown any racial animus in *her* case, nor any discriminatory effect.  The prosecution argues that Johnson contends that her statistics relate to similarly-situated defendants, but she does not explain who the comparators are or in what way they are similarly situated.  The prosecution then cites a number of factors about her case that she has not compared to any other defendant.  The prosecution argues that Johnson has not provided any evidence at all of discriminatory intent on the part of the government.  The prosecution also argues that the information that Johnson seeks is privileged and overbroad.

In reply, Johnson reiterates that she has met her burden to obtain the discovery she requests.  However, she also argues that the discovery that she seeks will aid her in demonstrating that the federal death penalty operates in an arbitrary, capricious, and irrational manner, even if her preliminary showing does not go so far as to suggest intentional discrimination.  She contends that, while statistics may not be enough ultimately to prove her contention, they should be enough to warrant court-ordered discovery.  She also argues that the discovery she seeks will allow her to show that other defendants who were treated differently were similarly situated.  Johnson also

discounts the prosecution's claims of privilege and overbreadth, noting that she cannot tell if the documents she seeks contain the information she needs until she obtains them.

As the parties note, the Supreme Court has established the standards applicable to a discovery request of precisely this sort in *United States v. Bass*, 536 U.S. 862 (2002) (per curiam). As the Court explained,

> In *United States v. Armstrong*, 517 U.S. 456, 465, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996), we held that a defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent. We need go no further in the present case than consideration of the evidence supporting discriminatory effect. As to that, *Armstrong* says that the defendant must make a "credible showing" that "similarly situated individuals of a different race were not prosecuted." *Id.*, at 465, 470, 116 S. Ct. 1480. The Sixth Circuit concluded that respondent had made such a showing based on nationwide statistics demonstrating that "[t]he United States charges blacks with a death-eligible offense more than twice as often as it charges whites" and that the United States enters into plea bargains more frequently with whites than it does with blacks. 266 F.3d, at 538-539 (citing U.S. Dept. of Justice, The Federal Death Penalty System: A Statistical Survey (1988-2000), p. 2 (Sept. 12, 2000)). Even assuming that the Armstrong requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants. And the statistics regarding plea bargains are even less relevant, since respondent was offered a plea bargain but declined it. See Pet. for Cert. 16. Under *Armstrong*, therefore, because respondent failed to submit relevant evidence that similarly situated persons were treated differently, he was not entitled to discovery.

*Bass*, 536 U.S. at 863-64 (footnote omitted). I conclude that Johnson has not made sufficient showing of discriminatory effect or arbitrariness to warrant the discovery that she requests, and no showing at all on discriminatory intent.

As to discriminatory or arbitrary effect, Johnson asserts that her case is distinguishable from *Bass*, because she "has identified similarly-situated non-Caucasian defendants—some charged with far worse offenses—who were permitted to plead guilty and receive a life sentence or a sentence of a term of years," and that she "has made the requisite offer" to plead guilty, where the defendant in *Bass* had declined a plea offer, so that the only things that differentiate her case are her race, ethnicity, national origin, and gender. I do not agree. As the prosecution suggests, even if Johnson is willing to plead guilty, and the defendant in *Bass* was not, Johnson has not accounted for numerous factors that would demonstrate similarity (or difference), because, for example, she has not identified other defendants who have killed five people, including two little girls, who were minorities, not white; she has not accounted for the strength of the evidence against any of these other defendants; and she has not accounted for any other legitimate factors that might have caused the DOJ to agree to a plea to a life sentence, such as cooperation, criminal history, role in the offense, victims' criminal conduct, and the nature and extent of mitigation evidence. *See id.* at 863-64. Under the circumstances, Johnson's assertion that the only things that differentiate her case are race, ethnicity, national origin, and gender is a gross over-simplification. As the prosecution also argues, and Johnson apparently concedes, Johnson has not provided any evidence at all of discriminatory intent on the part of the government. *Id.* at 863 ("[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent.").

Johnson's Motion For Discovery To Support Motion To Strike (docket no. 869) is denied.

### III. CONCLUSION

Upon the foregoing,

1.  Johnson's September 14, 2012, Omnibus Motion To Dismiss The "Special Findings" From The Second Superseding Indictment And To Strike Notice Of Intent To Seek The Death Penalty (docket no. 864) is **denied**;

2.  Johnson's September 14, 2012, Motion To Dismiss Particular Aggravating Factors From The Second Superseding Indictment, And To Strike Particular Aggravating Factors From The Second Notice Of Intent To Seek The Death Penalty, And For Other Relief (docket no. 865) is **denied, in part, and denied as moot, in part**, as follows:

   a.  That part of the motion asking that the non-statutory aggravating factors be stricken from the Second Notice Of Intent, because the FDPA does not authorize the utilization of non-statutory aggravating factors, is **denied**;

   b.  That part of the motion asking that certain statutory and non-statutory aggravating factors set forth in the Second Superseding Indictment and/or the Second Notice of Intent be stricken or clarified is **denied as moot**, without prejudice to timely reassertion as to the Third Notice Of Intent;

3.  Johnson's September 14, 2012, Motion To Compel Discovery Of Evidence In Support Of United States Attorney's Reasons Not To Seek The Death Penalty, Or, In The Alternative, For In-Camera Review Of The Death Penalty Evaluation Form (docket no. 867) is **denied**;

4.  Johnson's September 14, 2012, Motion To Preclude Capital Sentencing Hearing (docket no. 868) is **denied**; and

5.    Johnson's September 14, 2012, Motion For Discovery To Support Motion To Strike Death Penalty Based Upon Influence Of Arbitrary Factor[s] Of Race And Gender Of Victim[s] (docket no. 869) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 25th day of October, 2012.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA